[This decision has been published in *Ohio Official Reports* at 92 Ohio St.3d 493.]

Q3 STAMPED METAL, INC., APPELLEE, *v.* ZAINO, TAX COMMR., APPELLANT.

[Cite as *Q3 Stamped Metal, Inc. v. Zaino*, 2001-Ohio-1270.]

*Taxation—Use tax—Exceptions—Forklift used to remove and replace dies in stamping presses used in manufacturing process does not qualify for exception contained in R.C. 5739.011(B)(4)—Purchases of welding helmets, glasses, and lenses used in manufacturing process involving stamping presses excepted from taxation under R.C. 5739.011(B)(4).*

(No. 00-914—Submitted July 17, 2001—Decided August 15, 2001.)

APPEAL from the Board of Tax Appeals, No. 98-A-506.

————————————

*Per Curiam.*

{¶ 1} Q3 Stamped Metal, Inc. ("Q3"), appellee, located in Columbus, primarily manufactures parts for auto and truck companies, but it also manufacturers other products, such as dishwasher parts. These parts are manufactured by inserting blank metal sheets into one or more stamping presses that shape the metal.

{¶ 2} Each stamping press contains metal dies that define the shape that the sheet metal will take when the press is closed. When Q3 changes the product, it changes the dies used in a press. Since these dies can weigh from a few hundred to seventy thousand pounds, Q3 uses a designated forklift to remove and replace them.

{¶ 3} As part of its production process, Q3 may also conduct welding operations. In the welding operation, welders spot-weld parts together or rework other parts. Welders operating in the welding area wear eye shields or goggles.

{¶ 4} For the audit period April 1, 1992 through June 30, 1996, the Tax Commissioner, appellant, assessed a use tax against Q3's rental payments and purchases of repair parts for the forklift used to change dies in the stamping presses.

In addition, the commissioner assessed a use tax against Q3's purchases of welding helmets, glasses, and lenses ("welding equipment"). Q3 filed a petition for reassessment with the commissioner, who denied the objections. Q3 appealed to the Board of Tax Appeals ("BTA"), which reversed the commissioner's decision.

{¶ 5} This cause is now before the court upon an appeal as of right.

{¶ 6} The tax in question is the use tax; however, under R.C. 5741.02(C)(2) we apply the sales-tax exceptions contained in R.C. Chapter 5739.

{¶ 7} First, the commissioner contends that the forklift used to remove and replace dies in the stamping presses does not qualify for the exception contained in R.C. 5739.011(B)(4), while Q3 argues that this statute does apply. We agree with the commissioner.

{¶ 8} R.C. 5739.01(E)(9) excepts sales from taxation when the purpose of the consumer is "[t]o use the thing transferred, as described in section 5739.011 of the Revised Code, primarily in a manufacturing operation to produce tangible personal property for sale." The property included in the term "thing transferred" in R.C. 5739.01(E)(9) is described in R.C. 5739.011(B)(4):

"(B) For purposes of division (E)(9) of section 5739.01 of the Revised Code, the 'thing transferred' includes, but is not limited to, any of the following:

"* * *

"(4) Machinery, equipment, and other tangible personal property used during the manufacturing operation that control, physically support, produce power for, lubricate, or are otherwise necessary for the functioning of production machinery and equipment and the continuation of the manufacturing operation."

{¶ 9} The commissioner argues that the forklift does not perform its work during the manufacturing process and is not "otherwise necessary for the functioning of production machinery and equipment and the continuation of the manufacturing operation." On the other hand, Q3 argues that the forklift is used

during the manufacturing process and is vital for the continued functioning of the stamping presses and the continuation of the manufacturing process.

{¶ 10} The types of machinery, equipment, and other tangible personal property excepted by R.C. 5739.011(B)(4) are those that are "used during the manufacturing operation" and that either (1) control, (2) physically support, (3) produce power for, (4) lubricate, or (5) are otherwise necessary "for the functioning of production machinery and equipment and the continuation of the manufacturing operation."

{¶ 11} The term "manufacturing operation" used in R.C. 5739.011(B)(4) is defined in R.C. 5739.01:

"(S) 'Manufacturing operation' means a process in which materials are changed, converted, or transformed into a different state or form from which they previously existed and includes refining materials, assembling parts, and preparing raw materials and parts by mixing, measuring, blending, or otherwise committing such materials or parts to the manufacturing process. 'Manufacturing operation' does not include packaging."

{¶ 12} The insertion of the definition of "manufacturing operation" into R.C. 5739.011(B)(4) results in the requirement that the machinery, equipment, and other tangible personal property must be "used during [the process in which materials are changed, converted, or transformed into a different state or form from which they previously existed]."

{¶ 13} In order for the forklift to remove and replace the dies, the press must be stopped. When the press is stopped, no manufacturing operation is being conducted. The removal and replacement of dies are not themselves manufacturing operations. Thus, when the forklift is being used to remove and replace dies, it is not being used "during" a time when manufacturing operations are being conducted. Furthermore, since the press can function and production can continue without the forklift, it is not necessary for the functioning of the production

machinery and equipment and the continuation of the manufacturing operation. Thus, the forklift is not excepted under R.C. 5739.011(B)(4).

{¶ 14} The commissioner next argues that Q3's purchases of welding equipment should not have been excepted by the BTA under R.C. 5739.011(B)(4). The commissioner argues that the welding equipment is the type of safety equipment included in R.C. 5739.011(C)(6) and therefore not excepted from taxation. To the contrary, Q3 maintains that the welding equipment is necessary for the continuation of its manufacturing operation and excepted by R.C. 5739.011(B)(4).

{¶ 15} R.C. 5739.011(C) provides that the term "thing transferred" for purposes of R.C. 5739.01(E)(9) does not include:

"(6) Tangible personal property used for the protection and safety of workers, unless the property is attached to or incorporated into machinery and equipment used in a continuous manufacturing operation."

{¶ 16} At the hearing before the BTA, Q3's witness testified that its welding operations produced a lot of light, and one could not weld unless one had a shield because "[y]our eyes will get burned after a flash or two and you'll be at the hospital." When asked if one would be able to see what one is welding without the shield, the witness answered, "no."

{¶ 17} Q3 contends that the welding equipment is used primarily in a manufacturing operation and analogizes its use of the welding equipment to that of the equipment used in Example 17 contained in Ohio Adm.Code 5703-9-21. Ohio Adm.Code 5703-9-21 contains hypothetical situations facing manufacturers and the commissioner's application of the sales tax statutes to the situation. Example 17 poses the following:

"A manufacturer of high technology electronic equipment provides its workers with microscopes which enable them to manipulate the components as they are assembled into the product."

**{¶ 18}** In his response to this hypothetical, the commissioner states, "The microscopes are not taxable because they are necessary for the continuation of the manufacturing operation." Q3 contends that its welding equipment, like the microscopes in the Tax Commissioner's example, are necessary for the continuation of its manufacturing operation.

**{¶ 19}** The testimony of Q3's witness discloses two functions for the welding equipment. The welding equipment fulfills a safety function by protecting the welder's eyes from the bright light and also fulfills a manufacturing function by permitting the welder to observe the welding being done. Because the two functions coexist, the primary function of the welding equipment cannot be quantified on a time basis. The BTA found that the items of welding equipment "are necessary and primarily used in the continuation of the manufacturing operation, for it is impossible to weld without use of the lenses and welding glasses." This court "will not overrule findings of fact of the Board of Tax Appeals that are based upon sufficient probative evidence." *Hawthorn Mellody, Inc. v. Lindley* (1981), 65 Ohio St.2d 47, 19 O.O.3d 234, 417 N.E.2d 1257, syllabus.

**{¶ 20}** We conclude that the facts support the BTA's finding that the welding equipment meets the requirements of R.C. 5739.011(B)(4). Just as the microscopes in Example 17 of Ohio Adm.Code 5703-9-21 are necessary to enable the workers to see the manufacturing operation they are conducting, the welding equipment is necessary to enable the welders to see the manufacturing operation they are conducting. Therefore, like the microscopes in Example 17 of Ohio Adm.Code 5703-9-21, the welding equipment used by Q3 is necessary for the continuation of the manufacturing operation and excepted from taxation.

**{¶ 21}** Accordingly, we hold that the BTA's decision regarding the forklift used for dies is unreasonable and unlawful, and we reverse it. However, we find that the decision of the BTA regarding welding equipment is reasonable and lawful and affirm it.

*Decision affirmed in part*

*and reversed in part.*

MOYER, C.J., DOUGLAS, RESNICK and F.E. SWEENEY, JJ., concur.

PFEIFER and LUNDBERG STRATTON, JJ., concur in part and dissent in part.

COOK, J., concurs in part and dissents in part.

_____

**COOK, J., concurring in part and dissenting in part**.

{¶ 22} I agree with the majority that the forklift designated for removal and replacement of dies does not meet R.C. 5739.011(B)(4)'s definition of "thing transferred" and thus does not qualify for R.C. 5739.01(E)(9)'s exception to the use tax. Unlike the majority, however, I believe that the BTA's decision regarding the welding helmets, glasses, and lenses was unreasonable and unlawful. This property fits R.C. 5739.011(C)(6)'s exception to R.C. 5739.011(B)(4), and that should be the end of the matter. The majority's analogy between this property and the microscopes described in Ohio Adm.Code 5703-9-21, Example 17, is unpersuasive. Such microscopes, unlike the welding helmets, glasses, and lenses at issue here, are not "used for the protection and safety of workers." R.C. 5739.011(C)(6). I would reverse the decision of the BTA.

_____

**LUNDBERG STRATTON, J., concurring in part and dissenting in part**.

{¶ 23} I concur with the majority in affirming the BTA as to the use of welding helmets, glasses, and lenses but respectfully dissent as to the reversal of the BTA on the forklift issue.

{¶ 24} We state in our opinion in affirming the helmets, glasses, and lenses portion that "[t]his court 'will not overrule findings of fact of the Board of Tax Appeals that are based upon sufficient probative evidence,' " quoting *Hawthorn Mellody, Inc. v. Lindley* (1981), 65 Ohio St.2d 47, 19 O.O.3d 234, 417 N.E.2d 1257,

syllabus. Yet overruling such a finding of fact is precisely what we do in reversing as to the forklift.

{¶ 25} The BTA made a factual determination, based on the testimony of several witnesses, that the forklift was essential to the manufacturing process. The BTA in its opinion found, "Obviously, the die setter forklift is 'necessary for the functioning of production machinery and equipment and the continuation of the manufacturing operation,' considering the average die weights involved in Q3's manufacturing processes. Clearly, it would not be humanly possible to lift, move, and maneuver these dies into place without the assistance of the forklift, and without the dies, the production equipment would not operate and the manufacturing process would cease. Accordingly, transactions involving the die setter forklift shall be removed from the assessment," quoting R.C. 5739.011(B)(4).

{¶ 26} Yet we now substitute our opinion on this factual finding and determine that the forklift is not essential to the manufacturing process.

{¶ 27} The factual findings of the BTA were *not* unlawful or unreasonable. We merely differ. Such is not a basis for a reversal.

{¶ 28} Therefore, I would respectfully affirm the BTA decision in its entirety.

PFEIFER, J., concurs in the foregoing opinion.

───────────────

*Brickler & Eckler, L.L.P., Mark A. Engle* and *Mary L. Robins,* for appellee.

*Betty D. Montgomery,* Attorney General, and *Robert C. Maier,* Assistant Attorney General, for appellant.

───────────────