ELLWOOD ENGINEERED CASTINGS COMPANY, APPELLEE AND CROSS-APPELLANT, *v.* ZAINO, TAX COMMR., APPELLANT AND CROSS-APPELLEE.

[Cite as *Ellwood Engineered Castings Co. v. Zaino,* 98 Ohio St.3d 424, 2003-Ohio-1812.]

(No. 2002–0658—Submitted February 12, 2003—Decided April 23, 2003.)

**Per Curiam.**

{¶ 1} Appellee and cross-appellant Ellwood Engineered Castings Company's ("EEC") primary business is manufacturing castings for the steel and automotive industries. The principal raw materials used by EEC are scrap ingot molds. When the scrap molds are received at EEC's property, they are unloaded and stacked by a crane owned and operated by International Mill Service, Inc. ("IMS"), with whom EEC has contracted. IMS is paid on a tonnage basis for unloading the scrap molds, breaking them into pieces, and using its truck to deliver the pieces to an area designated by EEC.

{¶ 2} After the scrap molds are dumped by IMS, EEC uses its own boom crane to sort the pieces into 1,500-ton piles. EEC then uses its boom crane to load the piles into gondola rail cars, which deliver the scrap to the melt shop. After the pieces are melted, they are used to make castings.

{¶ 3} Prior to making a casting, a sand mold is made by compacting sand around a pattern in a flask and allowing it to harden. After the pattern is stripped out of the sand mold, molten metal is poured into the space left by the pattern.

{¶ 4} Before being compacted around the pattern, the sand used to make a sand mold is heated and mixed with chemicals. As the sand travels through the heating and mixing process, abrasion and rubbing of the sand particles create small particles called "fines." The fines need to be removed before the sand is compacted to prevent the sand mold from crumbling and falling apart. To remove the fines from the sand before it reaches the sand molds, EEC has installed dust collectors. The dust collectors also prevent fines from entering the air in the plant.

{¶ 5} EEC was audited for use taxes for the period July 1, 1995, to September 30, 1998. Among the purchases assessed were costs associated with its boom crane and costs for the dust collectors.

{¶ 6} Contending that these costs were for equipment primarily used in its manufacturing operation to produce tangible personal property for sale and therefore excepted from taxation, EEC filed a petition for reassessment. After a hearing, the Tax Commissioner denied EEC's objections relating to the boom crane and the dust collectors. EEC appealed to the Board of Tax Appeals ("BTA"). After a hearing, during which EEC presented testimony of its plant engineer and controller, the BTA reversed the commissioner's assessment against costs associated with the boom crane and affirmed the commissioner's assessment

against costs for the dust collectors. Specifically, the BTA found that the Tax Commissioner had erred in determining that the production activities of IMS and EEC involved two manufacturing processes rather than one.

{¶ 7} The Tax Commissioner filed his appeal seeking reversal of the BTA's decision relating to the boom crane, in part by questioning the jurisdiction of the BTA to determine whether the IMS–EEC relationship created one or two manufacturing processes. EEC filed a cross-appeal seeking reversal of the BTA's decision upholding the assessment of use tax against its dust collectors.

{¶ 8} This cause is now before the court upon an appeal and cross-appeal as of right.

{¶ 9} The threshold question is whether the BTA lacked jurisdiction to consider the Tax Commissioner's determination that there were two manufacturing processes conducted on EEC's premises when no alleged error in this regard was specified in EEC's notice of appeal to the BTA.

{¶ 10} The statutory requirements for filing an appeal from a final determination of the Tax Commissioner to the BTA are set forth in R.C. 5717.02, which provides, "Such appeals shall be taken by the filing of a notice of appeal with the board * * *. * * * The notice of appeal shall have attached thereto * * * a true copy of the notice sent by the commissioner * * * and *shall also specify the errors therein complained of* * * *." (Emphasis added.)

{¶ 11} In *Am. Restaurant & Lunch Co. v. Glander* (1946), 147 Ohio St. 147, 149–150, 34 O.O. 8, 70 N.E.2d 93, we reviewed the requirements for filing a notice of appeal under G.C. 5611, the predecessor to R.C. 5717.02, and held:

{¶ 12} "These requirements are specific and in terms that are mandatory. The very statute which authorizes the appeal prescribes the conditions and procedure under and by which such appeal may be perfected. Where a statute confers the right of appeal, adherence to the conditions thereby imposed is essential to the enjoyment of the right conferred. 'The party who seeks to exercise this right, must comply with whatever terms the statutes of the state impose upon him as conditions to its enjoyment,'" quoting *Collins v. Millen* (1897), 57 Ohio St. 289, 291, 48 N.E. 1097.

{¶ 13} EEC asserts that there was one manufacturing process—i.e., that IMS began the manufacturing process, and EEC completed it. Based on its assertion that there was only one manufacturing process, EEC argued that its boom crane should be excepted from taxation because it was moving work-in-progress from one step of manufacturing to another. However, the commissioner rejected EEC's argument, finding that "[t]he problem with the petitioner's argument is that since there are two entities, IMS and Ellwood Engineered Castings, there are two manufacturing processes at issue—not one." In determining that there

were two manufacturing operations rather than one, the commissioner found that the boom crane was not excepted from taxation as being used for moving work-in-process.

{¶ 14} The notice of appeal that EEC filed with the BTA set forth the following:

{¶ 15} "The Tax Commissioner's Final Determination is erroneous, unreasonable and unlawful in that:

{¶ 16} "1. It imposes tax upon EEC's costs associated with its boom crane and dust collectors which are production machinery exempt from tax under R.C. § 5739.01(E)(9).

{¶ 17} "2. It imposes tax on costs associated with the boom crane and dust collectors which are not subject to tax pursuant to R.C. §§ 5739.01(B) and 5739.02(B).

{¶ 18} "3. It is not based on evidence and is contrary to law."

{¶ 19} In *Queen City Valves v. Peck* (1954), 161 Ohio St. 579, 583, 53 O.O. 430, 120 N.E.2d 310, we held that "[u]nder the wording of the statute the [BTA] was entitled to be advised specifically of the various errors charged to the Tax Commissioner. The statute requires in plain language that the errors complained of be specified."

{¶ 20} In *Buckeye Internatl., Inc. v. Limbach* (1992), 64 Ohio St.3d 264, 267, 595 N.E.2d 347, we held, "Failure to include errors in the notice of appeal to the BTA results in the BTA's lack of jurisdiction over the errors and the court's inability to review such errors." We have also held that "[u]nder R.C. 5717.02, a notice of appeal does not confer jurisdiction upon the Board of Tax Appeals to resolve an issue, unless that issue is clearly specified in the notice of appeal." *Cleveland Elec. Illum. Co. v. Lindley* (1982), 69 Ohio St.2d 71, 75, 23 O.O.3d 118, 430 N.E.2d 939.

{¶ 21} The jurisdictional issue raised by the Tax Commissioner in this case is essentially the same issue he raised in *Lenart v. Lindley* (1980), 61 Ohio St.2d 110, 114, 15 O.O.3d 152, 399 N.E.2d 1222. In *Lenart*, the Tax Commissioner argued that the BTA exceeded its statutory authority under R.C. 5717.02 when it determined issues not specified in the notices of appeal. The Tax Commissioner contended that the decision of the BTA was grounded solely upon an alleged error of the commissioner that the taxpayers had not specifically raised in their notices of appeal. We agreed with the Tax Commissioner, finding that the BTA's determination was predicated upon such a specific finding, and "a perusal of the notices of appeal does not demonstrate an assignment of error which specifically alleges this as a basis upon which [the Tax Commissioner's] decision should be reversed." We reversed and remanded for further proceedings.

{¶ 22}   EEC's notice of appeal to the BTA contains no specification of error that could be construed as relating to the commissioner's finding of ultimate fact, i.e., that there were two manufacturing processes, not one.   However, in spite of the lack of any specification of error in the notice of appeal relating to this finding, the BTA stated as one of its main points that "we find we must disagree with the tax commissioner's *ipso facto* assertion in his final determination that there must be two manufacturing processes at work merely because Ellwood Engineered Castings Co. used an independent contractor to perform a portion of its manufacturing process * * *."   As a result of its reversal of the Tax Commissioner's finding, the BTA found the commissioner's final determination relating to the boom crane to be unreasonable and unlawful and granted the exemption.

{¶ 23}   Because the alleged error of the Tax Commissioner regarding his determination that there were two manufacturing processes was not specified in EEC's notice of appeal, the BTA lacked jurisdiction to consider that issue. Therefore, we reverse and remand the issue concerning the boom crane to the BTA for a decision based on the commissioner's finding that there were two manufacturing processes.   Because of our decision on this issue, we need not consider the second issue raised by the Tax Commissioner.

{¶ 24}   The first issue raised by EEC's cross-appeal is whether its dust collectors are excepted from taxation as equipment used to totally regulate the environment in a special and limited area of the manufacturing facility under R.C. 5739.01(E)(9) and 5739.011(C)(5).

{¶ 25}   Although the tax assessed against EEC was a use tax, we will discuss only the sales tax provisions because R.C. 5741.02(C)(2) excepts from the use tax the acquisition of personal property that, if made in Ohio, would not be a sale subject to the tax imposed by R.C. 5739.01 to 5739.31.

{¶ 26}   The sales tax is an excise tax levied on each retail sale made in this state.   However, by statute, certain sales are exempted or excepted from the sales tax.   Here we are concerned with the exception from sales taxation found in R.C. 5739.01(E)(9) and 5739.011(C)(5).   R.C. 5739.01(E)(9) provides:

{¶ 27}   "(E) 'Retail sale' and 'sales at retail' include all sales except those in which the purpose of the consumer is:

{¶ 28}   " * * *

{¶ 29}   "(9) To use the thing transferred, as described in section 5739.011 of the Revised Code, primarily in a manufacturing operation to produce tangible personal property for sale."

{¶ 30}   R.C. 5739.011 delineates various items and then classifies them as either included or not included in the term "thing transferred" for purposes of R.C. 5739.01(E)(9).   R.C. 5739.011(B) lists items that are deemed a "thing

transferred" and therefore not taxable pursuant to R.C. 5739.01(E)(9), and R.C. 5739.011(C) lists items that are not deemed a "thing transferred" and therefore taxed, with some exceptions, under R.C. 5739.01(E)(9).

{¶ 31} EEC contends that its dust collectors are excepted from taxation under R.C. 5739.011(C)(5), which provides:

{¶ 32} "(C) For purposes of division (E)(9) of section 5739.01 of the Revised Code, the 'thing transferred' does not include any of the following:

{¶ 33} " * * *

{¶ 34} "(5) Machinery, equipment, and other tangible personal property used for ventilation, dust or gas collection, humidity or temperature regulation, or similar environmental control, *except* machinery, equipment, and other tangible personal property that totally regulates the environment in a special and limited area of the manufacturing facility where the regulation is essential for production to occur." (Emphasis added.)

{¶ 35} For discussion purposes, R.C. 5739.011(C)(5) can be divided into two parts. In the first part, the General Assembly has specifically excluded as a "thing transferred" machinery, equipment, and other tangible personal property used for dust collection or similar environmental control. However, in the second part, the General Assembly provided a limited exception from the general exclusion.

{¶ 36} EEC claims exception from taxation under the second part of R.C. 5739.011(C)(5). To be considered for this exception, (1) the machinery, equipment, or other tangible personal property must be used to totally regulate the environment, (2) the regulation must be in a special and limited area of the manufacturing facility, and (3) the regulation must be essential for production to occur.

{¶ 37} In considering statutes relating to exemption or exception from taxation, we are guided by the principle that such statutes "are to be strictly construed, and one claiming such exemption or exception must affirmatively establish his right thereto." *Natl. Tube Co. v. Glander* (1952), 157 Ohio St. 407, 47 O.O. 313, 105 N.E.2d 648, paragraph two of the syllabus.

{¶ 38} In Ohio Adm.Code 5703-9-21(D)(6), the Tax Commissioner has set forth the following explanation for R.C. 5739.011(C)(5):

{¶ 39} "(D) Things transferred for use in a manufacturing operation do not include:

{¶ 40} " * * *

{¶ 41} "(6) Machinery, equipment, and other tangible personal property used for ventilation, dust, or gas collection, humidity or temperature regulation, or similar environmental control, except machinery, equipment, and other tangible

personal property that totally regulates the environment in a special and limited area of the manufacturing facility where regulation is essential for production to occur.

{¶ 42} "All equipment and supplies that monitor, regulate, or improve the environmental conditions in the manufacturing facility are taxable. This includes all lighting, heaters, air conditioning equipment, fans, heat exhaust equipment, air makeup equipment, dust control or collection equipment, and gas detection, collection, and exhaust equipment. * * *

{¶ 43} "The only exception to the taxing of these items is equipment which totally regulates the environment in a special and limited area of the facility, such as a clean room or paint booth, where such total regulation is essential for production to occur."

{¶ 44} Ohio Adm.Code 5703-9-21-(D)(6) presents two examples in which the Tax Commissioner considers equipment described as exempt from taxation under the second part of R.C. 5739.011(C)(5). Example 7 describes a clean room separated from the rest of the facility by airtight partitions. All air entering the clean room is filtered and regulated as to temperature and humidity. Example 49 describes a paint booth that contains ventilation equipment providing the booth with a controlled atmosphere so that paint is applied to each automotive part under nearly identical conditions.

{¶ 45} EEC contends that its dust collectors are excepted from taxation as equipment used to control the environment in a special or limited area of its manufacturing facility, specifically the environment within the pipes and sand heaters carrying the sand to the mixers.

{¶ 46} When considering a claim for exception under R.C. 5739.01(E)(9), we must consider R.C. 5739.011(D), which provides:

{¶ 47} "(D) For purposes of division (E)(9) of section 5739.01 of the Revised Code, if the 'thing transferred' is a machine used by a manufacturer in both a taxable and an exempt manner, it shall be totally taxable or totally exempt from taxation based upon its quantified primary use."

{¶ 48} Therefore, the tax status of EEC's dust collectors must be determined based on their primary use, even if other uses might be exempt. From the evidence presented to it, the BTA found that "[t]he primary purpose of the dust collection system is to prevent silica sand fines from adulterating sand molds that are used as castings." Thus, the primary use of the dust collectors is to control the quality of the material going into the sand castings, not to regulate the environment "in a special and limited area of the manufacturing facility where the regulation is essential for production to occur." EEC's use of the dust collectors does not meet the requirements for an exception from taxation under R.C. 5739.011(C)(5).

{¶ 49} EEC also contends that its dust collectors are excepted under R.C. 5739.011(B)(4) or 5739.011(B)(5). However, EEC's notice of cross-appeal sets forth only a complained-of error under R.C. 5739.011(B)(4); there is no error alleged under R.C. 5739.011(B)(5). In *Dana Corp. v. Limbach* (1991), 60 Ohio St.3d 26, 30, 573 N.E.2d 39, we held, "An appellant does not specify all claimed errors under a statute by naming that statute and specifying one error under it." R.C. 5739.011 lists many items and uses that might be claimed as the basis for establishing an exception from taxation. This court cannot consider an exception under R.C. 5739.011 that is not specifically claimed in the notice of appeal. Since no complaint of error was contained in EEC's notice of cross-appeal for R.C. 5739.011(B)(5), we will consider only EEC's complaint of error under R.C. 5739.011(B)(4).

{¶ 50} R.C. 5739.011(B)(4) provides that for the purposes of R.C. 5739.01(E)(9), the "thing transferred" includes:

{¶ 51} "(4) Machinery, equipment, and other tangible personal property used during the manufacturing operation that control, physically support, produce power for, lubricate, or are otherwise necessary for the functioning of production machinery and equipment and the continuation of the manufacturing operation."

{¶ 52} EEC contends that the BTA erred in not excepting its dust collectors under R.C. 5739.011(B)(4). The BTA's decision acknowledges that EEC claims an exception for its dust collectors under R.C. 5739.011(B)(4). However, a review of the BTA's decision fails to disclose any finding by the BTA relating to the use of the dust collectors and EEC's claim under R.C. 5739.011(B)(4).

{¶ 53} Before we can perform our duty to affirm reasonable and lawful decisions and reverse unreasonable or unlawful ones, the BTA must set forth its findings and the basis therefore. *Howard v. Cuyahoga Cty. Bd. of Revision* (1988), 37 Ohio St.3d 195, 197, 524 N.E.2d 887. Therefore, we remand EEC's claim for exception under R.C. 5739.011(B)(4) to the BTA so that it can state its finding and the basis for it.

{¶ 54} For all of the foregoing reasons, we affirm the BTA's decision denying exception for the dust collectors under R.C. 5739.011(C)(5); however, we remand this matter to the BTA, first to determine whether the boom crane is excepted from taxation based on there being two manufacturing processes and second for a decision and finding on EEC's claim for exception of its dust collectors under R.C. 5739.011(B)(4).

Decision affirmed in part,
reversed in part
and cause remanded.

MOYER, C.J., RESNICK, F.E. SWEENEY and O'CONNOR, JJ., concur.

LUNDBERG STRATTON, J., concurs in part and dissents in part.

PFEIFER, J., dissents.

COOK, J., dissents.

---

**LUNDBERG STRATTON, J., concurring in part and dissenting in part.**

{¶ 55}  I concur in the majority's decision to remand this case to the BTA to determine whether EEC's boom crane is exempt from taxation on the basis that there are two manufacturing processes and to determine whether EEC's dust collectors are exempt under R.C. 5739.011(B)(4).  However, I dissent from the majority's decision that the cost of EEC's dust collectors is taxable under R.C. 5739.011(C)(5).

{¶ 56}  The majority recognizes that equipment that "totally regulates the environment in a special and limited area of the manufacturing facility where the regulation is essential for the production to occur" is exempt from taxation.  R.C. 5739.011(C)(5).  However, the majority never reaches the issue of whether EEC's dust collectors are exempt from taxation under this provision.  Rather, the majority confirms that when considering a claim for exemption of equipment under R.C. 5739.01(E)(9), the tax status of the equipment must be determined based on its "primary *use*."  (Emphasis added.)  R.C. 5739.011(D).  The majority then cites the BTA's finding that "[t]he primary *purpose* of the dust collection system is to prevent silica sand fines from adulterating sand molds that are used as castings."  (Emphasis added.)  Based on that finding, the majority concludes that "the primary *use* of the dust collectors is to control the quality of the material going into the sand castings, not to regulate the environment 'in a special and limited area of the manufacturing facility where the regulation is essential for production to occur,'" and that therefore the cost of the dust collectors is not exempt from taxation.  (Emphasis added.)  I disagree.

{¶ 57}  The tax status of such equipment is determined by its "primary *use*," not its primary *purpose*.  R.C. 5739.011(D).  Thus, the majority's reliance on the BTA's determination of the *purpose* of EEC's dust collectors as the basis for denying an exemption is misplaced.  The majority and the BTA should have examined the primary *use* of the EEC's dust collection system, which is to capture and remove fines from the sand.

{¶ 58}  Because I believe that EEC's dust collectors are exempt from taxation under R.C. 5739.011(C)(5), and because the majority never conducts an analysis under that provision, my dissent addresses the BTA's determination of that issue.  The test under R.C. 5739.011(C)(5) is twofold.  " 'First, a taxpayer must demonstrate that the regulation of a special and limited area is total.' "  *Aeroquip Corp. v. Zaino* (Nov. 15, 2002), BTA No. 2000–S–161, 2002 WL 31622634, quoting *Aeroquip Corp. v. Tracy* (Dec. 15, 2000), BTA No. 97–T–1312.  This language

means that in order to be exempt, "the equipment must regulate an environment that is enclosed, self contained, or in some way separated from that of the entire manufacturing facility." *Aeroquip Corp. v. Zaino,* BTA No. 2000–S–161. Second, the taxpayer " 'has the additional burden of demonstrating that the regulation is essential for production to occur.' " Id., quoting *Aeroquip Corp. v. Tracy,* BTA No. 97–T–1312.

{¶ 59} The BTA's decision finding EEC's dust collectors taxable under R.C. 5739.011(C)(5) was based in part on the following questions and answers:

{¶ 60} "Q: * * * So the *building* for the Small Baghouse Dust Collection system, then, would that be like a clean room type environment that I asked you about earlier?

{¶ 61} "A: No.

{¶ 62} "Q: So it's not a totally controlled environment within that *building?*

{¶ 63} "A: No." (Emphasis added.)

{¶ 64} The BTA also relied upon the fact that "significant portions of the dust collection system are located outside of *buildings.* And the *buildings* that sand heaters and mixers are located in are made only of corrugated sheet metal." (Emphasis added.) Based on these findings, the BTA concluded that "[n]o sealed or closed environment is provided. Nor are airlock doors or other such provisions installed to effect total control over the environment." Thus, the BTA concluded that EEC's dust collectors were not exempt from taxation under R.C. 5739.011(C)(5). I believe that the BTA's analysis is flawed.

A. EEC's Dust Collection System Totally Regulates the Environment in a Limited and Special Area of Its Manufacturing Facility

{¶ 65} In addressing whether the dust collectors totally regulated a special and limited area of EEC's manufacturing facility, the BTA improperly focused on whether the *buildings* in which the dust collectors operated were sealed. The proper focus was whether the *dust collection system* operated as a closed system. *Aeroquip Corp.,* BTA No. 2000–S–161.

{¶ 66} EEC's plant engineer testified that the sand fines are collected for two purposes. The primary purpose is to prevent the fines from adulterating the molds, but a secondary purpose is to prevent dust from entering the facility. Diagrams indicate that fines are captured from the sand silos and sand heaters and are transported through pipes to a dust collector bin. Thus, the fines are not disbursed into the manufacturing facility or to the environment outside the facility. This is evidence that the dust collectors "totally regulat[e] the environment in a special and limited area of [EEC's] manufacturing facility" because the pipes and dust collectors are a closed system that is separate from the remainder of the manufacturing facility. R.C. 5739.011(C)(5).

### B. Capture and Removal of the Fines are Necessary to Production of the Castings

{¶ 67} Fines are smaller-than-average grains of sand that are created when the sand travels through the pipes on its way to being compressed into a mold. The fines must be removed because their presence during formation of the sand mold will cause it to crumble. Therefore, removal of these fines from the sand heaters and silos is "essential for production to occur."

### C. Conclusion

{¶ 68} I believe that EEC's dust collectors "totally regulat[e] the environment in a special and limited area of the manufacturing facility," and "the regulation is essential for production to occur," and that therefore they are exempt from taxation pursuant to R.C. 5739.011(C)(5).

{¶ 69} Thus, I concur with the majority's holding to remand to determine whether EEC's boom crane is exempt from taxation on the basis that there are two manufacturing processes and further to determine whether EEC's dust collectors are exempt under R.C. 5739.011(B)(4). But I dissent from the majority's holding that EEC's dust collectors are taxable and would find that they are exempt from taxation under R.C. 5739.011(C)(5). Accordingly, I concur in part and dissent in part from the judgment of the court.

———————

PFEIFER, J., dissenting.

{¶ 70} I would affirm the decision of the Board of Tax Appeals on the issue of the boom crane and the BTA's jurisdiction to consider the question. The issue of how many processes were involved in manufacturing was at the very heart of the case. And, as the BTA held, "R.C. 5739.011(B) delineates property included within the contemplation of R.C. 5739.01(E)(9) and Ellwood Engineered Castings Co. properly placed in issue all types of property referred to in R.C. 5739.011(B)—including R.C. 5739.011(B)(4) property—when it specified R.C. 5739.01(E)(9) in its petition for reassessment."

{¶ 71} In regard to the taxability of the dust collectors, I agree with Justice Stratton's conclusion that they are exempt from taxation pursuant to R.C. 5739.011(C)(5).

———————

COOK, J., dissenting.

{¶ 72} I respectfully dissent and would affirm the decision of the Board of Tax Appeals.

---

Jim Petro, Attorney General, and Richard C. Farrin, Assistant Attorney General, for appellant and cross-appellee.

Buckingham, Doolittle & Burroughs, L.L.P., Steven A. Dimengo and Christopher C. Esker, for appellee and cross-appellant.