**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *E. Mfg. Corp. v. Testa,* Slip Opinion No. 2018-Ohio-2923.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2018-OHIO-2923

EAST MANUFACTURING CORPORATION, APPELLANT AND CROSS-APPELLEE, *v.* TESTA, TAX COMMR., APPELLEE AND CROSS-APPELLANT.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *E. Mfg. Corp. v. Testa,* Slip Opinion No. 2018-Ohio-2923.]**

*Use tax—Board of Tax Appeals correctly determined that manufacturer does not qualify for exemption from use tax under R.C. 5739.011(C)(5)'s exception for total environmental regulation of a "special and limited area" of the facility or for either R.C. 5739.011(B)(4)'s general exemption for items used in a manufacturing operation or R.C. 5739.011(B)(8)'s specific exemption for gas used in a manufacturing operation—Board of Tax Appeals' decision affirmed.*

(No. 2017-0666—Submitted April 24, 2018—Decided July 26, 2018.)

APPEAL and CROSS-APPEAL from the Board of Tax Appeals, No. 2015-2111.

_____

**DEGENARO, J.**

{¶ 1} In this direct appeal, we consider whether the Board of Tax Appeals ("BTA") correctly upheld a use-tax assessment on the natural-gas purchases of appellant and cross-appellee, East Manufacturing Corporation ("East"). East contends that the ambient heat provided by the natural gas was necessary for its manufacturing process and that the BTA erred by not granting an exemption under R.C. 5739.011(B)(4), (B)(8), or (C)(5). We disagree and affirm the decision of the BTA.

### Relevant Facts and Procedural History

{¶ 2} East manufactures custom aluminum truck trailers. The trailers are fabricated in six buildings, some of which are devoted to specialized steps in the manufacturing process. Only Building A has interior walls; administrative offices are separated by a wall from manufacturing areas. The other five buildings have open internal spaces to better accommodate the large truck attachments being fabricated and facilitate movement from station to station during the manufacturing process.

{¶ 3} Appellee and cross-appellant, tax commissioner, audited East's purchases for the period January 1, 2003, through December 31, 2006. Neither of East's two natural-gas suppliers collected use tax during this period. On February 27, 2009, the commissioner issued a use-tax assessment for East's natural-gas purchases during the audit period, exempting only the portion of natural gas used in painting operations, which took place in Building D, and welding systems. The remaining natural gas was deemed to have been used to heat the plant's six buildings, which together total roughly 382,240 square feet. This portion of East's natural gas, the commissioner determined, was taxable. East appealed to the BTA.

{¶ 4} At the hearing before the BTA, East conceded that the natural gas used to heat the administrative areas in Building A, which comprised 8.11 percent of the assessed natural gas, was nonexempt, but it contended that the remaining

91.89 percent of the assessed natural gas was exempt because maintaining the temperature at 50 degrees Fahrenheit or higher in the plant's buildings was essential to its manufacturing process. Emphasizing the extensive use of welding in its manufacturing process, East's manager for research and development testified about the high specifications the plant adhered to and their importance to the solidity of the welds, and he noted that welding at temperatures of 50 degrees or higher prevents condensation from accumulating on the aluminum and infecting the welds, steadies the hands of the welders, and is important in bending aluminum.[1]

{¶ 5} Citing the manual that East uses as a guide for aluminum welding, the tax commissioner countered in the BTA that condensation arises as a result of three interacting factors: ambient air temperature, relative humidity, and temperature of the metal to be processed. According to the manual (which was admitted into evidence at the BTA hearing), depending on the relative humidity, a difference of a certain number of degrees between the ambient air temperature and the temperature of the aluminum may result in condensation. But, so long as the aluminum temperature matches the ambient air temperature, condensation will not occur at any humidity level. The commissioner contends that this evidence negated East's argument and showed that no particular ambient temperature—such as 50 degrees—is required by industrial needs.

{¶ 6} The BTA affirmed the tax commissioner's assessment on the portion of the natural gas that East used to heat the plant. The BTA held that "East has failed to establish how the affected manufacturing area, which consists of all or portions of all of the buildings within the facility, could qualify as a 'special and

---

[1] East also contends that maintaining a temperature of at least 50 degrees is necessary for painting steel, which it performs in Building D. The tax commissioner argues that because East mentioned only welding in its petition for reassessment and notice of appeal to the BTA, East has waived the argument. Because of our disposition of the appeal, we will not address this issue.

limited area' " as required for exemption under R.C. 5739.011(C)(5). BTA No. 2015-2111, 2017 WL 1443845, *3 (Apr. 17, 2017).

{¶ 7} With respect to East's claim that the gas was generally "used during the manufacturing operation" under R.C. 5739.011(B)(4) and also qualified under the more specific exemption for gas "used in the manufacturing operation" under R.C. 5739.011(B)(8), the BTA concluded that the heating constituted a type of "quality control function" rather than a necessity for the manufacturing operation. 2017 WL 1443845 at *4. The BTA elaborated by stating that instead of being "necessary for the * * * continuation of the manufacturing process" under R.C. 5739.011(B)(4), "some of the issues raised by failure to regulate temperature in the manufacturing areas were cosmetic in nature, e.g., trailers were not as 'shiny' and therefore not as 'attractive,' " a consideration that brought East's products " 'within [a] margin of acceptable quality.' " 2017 WL 1443845 at *4, quoting the hearing transcript.

{¶ 8} The BTA denied East's claim for exemption in its entirety. East has appealed, and the tax commissioner has cross-appealed.

## "Thing Transferred" Exemption

{¶ 9} We review BTA decisions to determine whether they are reasonable and lawful. R.C. 5717.04. Factual findings will be affirmed if supported by reliable and probative evidence, while legal issues will be reviewed de novo. *Accel, Inc. v. Testa*, 152 Ohio St.3d 262, 2017-Ohio-8798, 95 N.E.3d 345, ¶ 11, 16. Although the BTA recited East's contentions that temperature maintenance was essential to its ability to perform welding and painting operations, the BTA made no finding that those assertions were correct. *See id.* at ¶ 35-37 (BTA's recitation of taxpayer's argument did not constitute a finding by the BTA that that argument was correct). Instead, the BTA focused on how the relevant statutes and administrative rules should be construed and applied assuming that East's factual contentions were true. Thus, this case primarily presents a question of law.

4

**{¶ 10}** Under the sales- and use-tax statutes, every sale or use of tangible personal property is presumed to be taxable. R.C. 5739.02(C) ("[A]ll sales made in this state are subject to the [sales] tax until the contrary is established"); R.C. 5741.02(G) ("[I]t shall be presumed that any use * * * of tangible personal property in this state is subject to the [use] tax until the contrary is established"). Thus, East bears the burden of proving that it is entitled to an exemption under R.C. 5739.011.

**{¶ 11}** R.C. 5739.02(B)(42)(g) states that the use tax does not apply "where the purpose of the purchaser is * * * [t]o use the thing transferred, as described in section 5739.011 of the Revised Code, primarily in a manufacturing operation to produce tangible personal property for sale."

**{¶ 12}** Throughout the proceedings before the tax commissioner, the BTA, and this court, East has claimed that it is entitled to the R.C. 5739.011 "thing transferred" exemption under three theories. First, it claims that the natural gas is "tangible personal property used during the manufacturing operation that control[s], physically support[s], produce[s] power for, lubricate[s], or [is] otherwise necessary for the functioning of production machinery and equipment and the continuation of the manufacturing operation," R.C. 5739.011(B)(4); Ohio Adm.Code 5703-9-21(C)(4); second, that it is "gas * * * used in the manufacturing operation," R.C. 5739.011(B)(8); Ohio Adm.Code 5703-9-21(C)(8); and third, that it is "tangible personal property that totally regulates the environment in a special and limited area of the manufacturing facility where the regulation is essential for production to occur," R.C. 5739.011(C)(5), an exception that applies to a "clean room or paint booth," Ohio Adm.Code 5703-9-21(D)(6).

**{¶ 13}** East's first two propositions of law assert that it is entitled to an exemption because the gas is used for regulating the environment in a special and limited area under R.C. 5739.011(C)(5). The statute provides that for purposes of R.C. 5739.02(B)(42)(g), the "thing transferred" does not include

> [m]achinery, equipment and other tangible personal property used for ventilation, dust or gas collection, humidity or temperature regulation, or similar environmental control, *except* machinery, equipment, and *other tangible personal property that totally regulates the environment in a special and limited area of the manufacturing facility where the regulation is essential for production to occur*.

(Emphasis added.) R.C. 5739.011(C)(5). Thus, under R.C. 5739.011(C)(5), gas used for temperature regulation generally is not exempt from taxation unless the gas qualifies under the "special and limited area" exception.

{¶ 14} Ohio Adm.Code 5703-9-21(D)(6) elaborates as follows:

> All equipment and supplies that monitor, regulate, or improve the *environmental conditions in the manufacturing facility are taxable*. This includes all lighting, heaters, air conditioning equipment, fans, heat exhaust equipment, air make up equipment, dust control or collection equipment, and gas detection, collection, and exhaust equipment. *This should not be read to change the traditional classification of real and personal property*.

> The only exception to the taxing of these items is equipment which totally regulates the environment in a *special and limited area* of the facility, *such as a clean room or paint booth*, where such total regulation is essential for production to occur. Even in such a special area, things that do not provide essential environmental regulation, such as safety or communication equipment, are taxable.

> See examples 7, 47, 48, and 49.

(Emphasis added.)

{¶ 15} To qualify for an exemption under this exception, East must satisfy a three-prong test: "(1) the * * * tangible personal property must be used to totally regulate the environment, (2) the regulation must be in a special and limited area of the manufacturing facility, and (3) the regulation must be essential for production to occur." *Ellwood Engineered Castings Co. v. Zaino*, 98 Ohio St.3d 424, 2003-Ohio-1812, 786 N.E.2d 458, ¶ 36. The failure to satisfy any prong of the test defeats the exemption claim.

{¶ 16} The meaning of a "clean room or paint booth" is explained by Example 7, which discusses the process of applying coating on specialized paper for full-color photocopying. The process must be done in a dust- and pollution-free environment separated from the rest of the plant. The example further explains:

> Three of the walls and the ceiling are free standing and not part of the walls and ceiling of the building itself; the fourth wall, however, is a section of a wall of the larger structure. Employees can only enter the clean room through two airlocks, which prevent dirty air from entering. All air is filtered and regulated as to temperature and humidity by heat pumps, electric heaters, dehumidifiers, and exhaust fans that serve only the clean room and maintain a positive air pressure in the room. This equipment is automatically controlled by a small computer using data from air monitoring sensors in the room. Employees must wear disposable paper coveralls, overshoes, and caps. The room has an intercom to minimize personnel traffic in and out of the room. Lighting in the room is by normal fluorescent fixtures attached to the ceiling.

Ohio Adm.Code 5703-9-21, Example 7.

**{¶ 17}** Under this scenario, "[s]ince the clean room provides environmental regulation in a special and limited area, and such regulation is essential for the manufacturing to occur, it is not taxable." *Id.* Conversely, Example 48 posits a candy-cane maker that needs to regulate temperature and humidity to fabricate the product, but no exemption is available because the regulation occurs throughout the factory. *Id.*, Example 48.

**{¶ 18}** The BTA concluded that because East's entire plant is heated, the temperature control is not focused on a "special and limited area." 2017 WL 1443845 at *3. The BTA then deemed it unnecessary to consider the other prongs of the test for applying the "special and limited area" exception because East's failure to satisfy the second prong defeated its exemption claim.

**{¶ 19}** East advances two contentions in challenging the BTA's conclusion. First, it argues that its natural gas heats a "special and limited area" inasmuch as only its buildings—not all the contiguous property under East's ownership that is part of the facility—are heated. But equating "special and limited area" with "indoors" would result in the exception swallowing the general rule that the "thing transferred" for temperature regulation is taxable and would defeat the restrictive effect of the statutory language. Second, East equates "subareas" in the buildings where the manufacturing occurs with "special and limited area." This argument fails because the heating permeates the entirety of the buildings, even if it is most important at particular places within the plant. Ohio Adm.Code 5703-9-21 describes a clean room as an area that is physically separated from the rest of the facility and where the environmental conditions are more fully regulated than in other areas.

**{¶ 20}** The stated purpose of R.C. 5739.011(C)(5) is to establish that the concept of "use[] in the manufacturing operation" under R.C. 5739.011(B) does *not* extend *generally* to the function of regulating the environment within which manufacturing occurs. *See Ellwood Engineered Castings*, 98 Ohio St.3d 424,

2003-Ohio-1812, 786 N.E.2d 458, at ¶ 35 (the "first part" of R.C. 5739.011(C)(5) "specifically exclude[s] as a 'thing transferred' * * * tangible personal property used for * * * environmental control"). And the "special and limited area" exception of R.C. 5739.011(C)(5) evinces the legislative decision to allow exemption in a very limited circumstance. *Ellwood Engineered Castings* at ¶ 35 (the "second part" of R.C. 5739.011(C)(5) "provide[s] a limited exception from the general exclusion"); *see* Ohio Adm.Code 5703-9-21(D)(6). The legislative creation of a narrow scope of exemption for particular items or transactions should not be circumvented by an expansive interpretation of other, more general tax exemptions. *See Columbus City School Dist. Bd. of Edn. v. Testa*, 130 Ohio St.3d 344, 2011-Ohio-5534, 958 N.E.2d 557, ¶ 28; *Innkeeper Ministries, Inc. v. Testa*, 148 Ohio St.3d 43, 2016-Ohio-5104, 68 N.E.3d 765, ¶ 19.

{¶ 21} Here, the only way the disputed 91.89 percent of the assessed natural gas could arguably contribute to the manufacturing process is by regulating the environment of East's entire plant. Thus, while East in essence likens its facility's configuration and use of the natural gas to the color-paper manufacturer described in Ohio Adm.Code 5703-9-21, Example 7, the record demonstrates that it is the equivalent of the candy-cane manufacturer described in Example 48 of that provision.

{¶ 22} East's argument in support of a more expansive interpretation of the "special and limited area" exception is contrary to the strict construction we must apply when considering exemption statutes and regulations generally. Personal property used to regulate temperature is specifically excluded from exemption by R.C. 5739.011(C)(5), and because of that exclusion, it cannot be deemed to be "used in the manufacturing operation" for purposes of applying R.C. 5739.011(B). That is the very function of R.C. 5739.011(C)(5) in the legislative scheme. The statute in clear terms requires the distinction between East's use of natural gas directly to operate welding and painting equipment, which was exempted, and its

use of gas to control the environment within which the manufacturing operation occurs, which R.C. 5739.011(C)(5) excludes from exemption. Thus, the BTA's rejection of East's "clean room" arguments under R.C. 5739.011(C)(5) was reasonable and lawful.

{¶ 23} We turn next to East's third proposition of law, which asserts that its purchase of natural gas is exempt because it qualifies as a "thing transferred" under R.C. 5739.011(B)(4), which generally exempts items used in a manufacturing operation, and under R.C. 5739.011(B)(8), which specifically exempts gas that is used in a manufacturing operation.

{¶ 24} As noted, because heating East's buildings constitutes "temperature regulation," it falls within the items excluded from the definition of "thing transferred" for use in manufacturing under R.C. 5739.011(C)(5). As a result, gas used for heating cannot also qualify as being "used in the manufacturing operation" for purposes of R.C. 5739.011(B)(4) and (B)(8). R.C. 5739.011(C)(5) is a more specific provision that excludes from exempt status those items that are used for temperature control, even if those items would otherwise fall under the more general exempting language of R.C. 5739.011(B).

{¶ 25} This reading relies on the "familiar rule of statutory construction that when there is a conflict between a general provision and a more specific provision in a statute, the specific provision controls." *MacDonald v. Cleveland Income Tax Bd. of Rev.*, 151 Ohio St.3d 114, 2017-Ohio-7798, 86 N.E.3d 314, ¶ 27, citing Scalia & Garner, *Reading Law: The Interpretation of Legal Texts* 183 (2012) and R.C. 1.51. Just as the more specific exclusion of pension income controlled over a more general definition of taxable income in *MacDonald*, the more specific exclusion of temperature regulation from the manufacturing exemption controls here.

{¶ 26} East directs our attention to *Q3 Stamped Metal, Inc. v. Zaino*, 92 Ohio St.3d 493, 751 N.E.2d 1001 (2001), but that case is inapposite. In *Q3*, we

10

affirmed a finding by the BTA that goggles worn by welders while they worked were exempt from the use tax because the goggles were "used in the manufacturing operation" pursuant to R.C. 5739.011(B)(4), despite the fact that the goggles also functioned as safety equipment, which is explicitly excluded from exemption by R.C. 5739.011(C)(6).

{¶ 27} Here, there is only one function that the assessed natural gas performs: controlling the manufacturing environment by heating it, a function that is fully removed from the division (B) exemptions pursuant to R.C. 5739.011(C)(5). By contrast, the goggles in *Q3* performed two distinct functions: protecting the welder's eyes—a safety, nonexempt function—and allowing the welder to see and perform welding tasks, thus being used in the manufacturing operation, an exempt function. *Id.* at 496. Here, East argues only that the heating function itself, which is nonexempt, is important to manufacturing. *Q3* is therefore inapposite.

{¶ 28} Although the BTA rejected East's claims under R.C. 5739.011(B) on different grounds than we apply here, the tax commissioner's cross-appeal explicitly places the statutory-construction point—namely, that the more specific statutory provision in R.C. 5739.011(C)(5) controls over the more general statutory provisions described in R.C. 5739.011(B)(4) and (B)(8)—at issue. *See Internatl. Paper Co. v. Testa*, 150 Ohio St.3d 348, 2016-Ohio-7454, 81 N.E.3d 1225, ¶ 30-34 (discussing circumstances under which a protective cross-appeal must be filed in order to preserve an issue). We are free to consider that point first, and because it is dispositive, we need not consider the validity of the other grounds relied on by the BTA when it rejected East's claims under R.C. 5739.011(B), especially because the failure to satisfy any of the three prongs of the *Ellwood* test defeats the exemption claim. *See Ellwood Engineered Castings*, 98 Ohio St.3d 424, 2003-Ohio-1812, 786 N.E.2d 458, at ¶ 36.

**{¶ 29}** Thus, the BTA's rejection of East's arguments under R.C. 5739.011(B)(4) and (B)(8) was reasonable and lawful for the reasons we articulate here rather than the finding relied upon by the BTA.

**{¶ 30}** In light of our disposition of East's propositions of law, the arguments raised in the tax commissioner's six propositions of law to defend the decision of the BTA are rendered moot.

### Conclusion

**{¶ 31}** The BTA's decision is reasonable and lawful. The BTA correctly determined that East does not qualify for an exemption from the use tax under R.C. 5739.011(C)(5)'s exception for total environmental regulation of a "special and limited area" of the facility. The BTA also correctly determined that East does not qualify for R.C. 5739.011(B)(4)'s general exemption for items used in a manufacturing operation or for R.C. 5739.011(B)(8)'s specific exemption for gas used in a manufacturing operation, although for the reasons stated herein rather than the BTA's rationale. For the foregoing reasons, we affirm the decision of the BTA.

Decision affirmed.

O'CONNOR, C.J., and O'DONNELL, KENNEDY, FRENCH, and DEWINE, JJ., concur.

FISCHER, J., concurs in judgment only.

————————————

Buckingham, Doolittle & Burroughs, L.L.C., Steven A. Dimengo, Matthew R. Duncan, and Richard B. Fry III, for appellant and cross-appellee.

Michael DeWine, Attorney General, and Sophia Hussain, Assistant Attorney General, for appellee and cross-appellant.

————————————