[This decision has been published in *Ohio Official Reports* at 94 Ohio St.3d 304.]

RUMPKE CONTAINER SERVICE, INC., ET AL., APPELLANTS, *v.* ZAINO, TAX COMMR., APPELLEE.

[Cite as *Rumpke Container Serv., Inc. v. Zaino*, 2002-Ohio-792.]

*Taxation—Sales tax on purchases of trucks, truck parts, and containers that are placed on the trucks for hauling waste materials by company in the business of collecting and transporting waste, refuse, and trash from customers' commercial, construction, and industrial sites for disposal in its landfills—Exemptions—R.C. 5739.02(B)(32)—Board of Tax Appeals' denial of applications for refund and reassessment of sales and use taxes from 1988 to 1996 affirmed—Private waste hauling company is not engaged in highway transportation of other's property for hire.*

(No. 00-2120—Submitted October 30, 2001—Decided February 27, 2002.)

APPEAL from the Board of Tax Appeals, Nos. 98-M-1254 and 98-M-1257 through 98-M-1264.

––––––––––––––––––

**LUNDBERG STRATTON, J.**

{¶ 1} Appellant Rumpke Container Service, Inc. ("Rumpke") has filed applications for refund and reassessment of sales and use taxes. Additional appellants Rumpke Iron Works, Inc., Marathon Equipment Company, Hershell McIntosh and Gary Patton, d.b.a. Arcanum Container and Repair, Environmental Steel Products, Inc., Miami Valley International Trucks, Inc., Truck & Parts of Tampa, Inc., and Tri-State Ford Truck Sales, Inc., have filed applications on Rumpke's behalf for refund of the sales and use taxes that Rumpke paid on purchases.

{¶ 2} Rumpke is in the business of collecting and transporting waste, refuse, and trash from customers' commercial, construction, and industrial sites for

disposal in its landfills. The various refund and reassessment applications concern Rumpke's purchases of trucks, truck parts, and containers that are placed on the trucks for hauling waste materials, during various audit periods from 1988 to 1996.

{¶ 3} In 1988, Rumpke applied for and received from the United States Department of Transportation ("USDOT") an identification number, "USDOT 330912," for its trucks. Rumpke also has been granted a permit by the Hamilton County General Health District to engage in garbage collection and removal. Rumpke had no permits or certificates from the Public Utilities Commission of Ohio.

{¶ 4} The Board of Tax Appeals rejected Rumpke's applications for refund on the basis that it failed to establish that it held certificates or permits from either the Interstate Commerce Commission or the Public Utilities Commission of Ohio to transport property and, therefore, it was not providing a transportation service for hire.

{¶ 5} This cause is now before the court upon an appeal as of right.

{¶ 6} While both sales and use taxes are at issue, we will discuss only the sales tax provisions because R.C. 5741.02(C)(2) provides that the use tax does not apply to property or services the acquisition of which, if made in Ohio, would be a sale not subject to the sales tax imposed by sections R.C. 5739.01 to 5739.31.

{¶ 7} Rumpke contends that its purchases of trucks and truck parts are exempt under R.C. 5739.02(B)(32). We disagree.

{¶ 8} R.C. 5739.02(B)(32) (formerly [33]) exempts the following transactions from the sales tax:

"(32) The sale, lease, repair, and maintenance of, parts for, or items attached to or incorporated in, motor vehicles that are primarily used for transporting tangible personal property by a person engaged in highway transportation for hire."

{¶ 9} The term "highway transportation for hire" used in R.C. 5739.02(B)(32) is defined in R.C. 5739.01(Z):

"(Z) 'Highway transportation for hire' means the transportation of personal property belonging to others for consideration by any of the following:

"(1) The holder of a *permit or certificate issued by this state* or the *United States authorizing the holder to engage in transportation of personal property belonging to others for consideration* over or on highways, roadways, streets, or any similar public thoroughfare;

"(2) A person who engages in the transportation of personal property belonging to others for consideration over or on highways, roadways, streets, or any similar public thoroughfare but who could not have engaged in such transportation on December 11, 1985, unless the person was the holder of a permit or certificate of the types described in division (Z)(1) of this section;

"(3) A person who leases a motor vehicle to and operates it for a person described by division (Z)(1) or (2) of this section."

{¶ 10} Rumpke contends that it is engaged in "highway transportation for hire" as defined by R.C. 5739.01(Z)(1). Rumpke bases that contention upon its status as a holder of a USDOT number, which it contends qualifies it as a "holder of a permit or certificate issued by this state or the United States authorizing the holder to engage in transportation of personal property belonging to others." That contention is not confirmed by our review of the federal regulations under which the USDOT number was granted.

{¶ 11} The USDOT identification number had its origin in the Motor Carrier Safety Act of 1984. P.L. 98-554, 98 Stat. Part 3, 2829, 2832. Section 206 of the Act directed the United States Secretary of Transportation to issue regulations pertaining to commercial motor vehicle safety. P.L. 98-554, 98 Stat. 2829, 2834. One of the regulations issued by the Federal Highway Administration of the Department of Transportation was Section 390.21, Title 49, C.F.R., which required "[e]very self-propelled commercial motor vehicle operated by a private motor carrier of property in interstate commerce" to obtain and display a motor

carrier identification number preceded by the letters "USDOT." 53 F.R. 18042, 18055, May 19, 1988, eff. Nov. 15, 1988. For purposes of the regulation, a "private motor carrier of property" was defined as "a person who transports, by motor vehicle, property of which that person is the owner, lessee or bailee." 53 F.R. 18042, 18054, May 19, 1988. Thus, as initially promulgated in 1988, the year in which Rumpke received its USDOT number, Section 390.21, Title 49, C.F.R. was not applicable to for-hire motor carriers, the classification Rumpke claims in this case. A "for-hire motor carrier" was defined for purposes of the subchapter containing Section 390.21, Title 49, C.F.R. as "a person engaged in the transportation of goods or passengers for compensation." 53 F.R. 18042, 18054, May 19, 1988. A United States Department of Transportation safety investigation report prepared in 1991 classified Rumpke as a private interstate carrier. The requirement to obtain a USDOT number was not made applicable to for-hire carriers until June 2000, which is after any of the audit periods involved here. 65 F.R. 35287, 35296, June 2, 2000.

{¶ 12} In discussing the USDOT number in a notice of proposed rulemaking, issued prior to the adoption of the USDOT number requirement in Section 390.21, Title 49, C.F.R., the Federal Highway Administration stated:

"The ID number serves to provide positive unique identification of the entity and distinguishes among entities having the same or similar names or trade names. This would be especially beneficial in coordinating violation data generated by State and local government officials. It would serve to authenticate the offender and prevent the violations from being recorded against an innocent carrier." 52 F.R. 26278, 26283, July 13, 1987.

{¶ 13} In a response to comments received as a result of a notice of proposed rulemaking involving Section 390.21, Title 49, C.F.R., the Federal Motor Carrier Safety Administration ("FMCSA") stated that it considered "the requirement to mark a CMV [commercial motor vehicle] with the USDOT number

as a vehicle identification issue, not a registration issue." 65 F.R. 35287, 35288, June 2, 2000. In addition the FMCSA stated in the same discussion that up until then, new motor carriers had been permitted to obtain a USDOT number under Section 390.21, Title 49, C.F.R. within ninety days after beginning operations. *Id.* However, since June 2000, Section 390.19, Title 49, C.F.R. has provided that all motor carriers conducting interstate operations must submit a form to obtain a USDOT number before commencing operations. Now, a new for-hire carrier is required to submit the form to obtain a USDOT number "along with its application for operating authority." *Id.* at 35288, 35296, June 2, 2000.

{¶ 14} Thus the history and purpose of Section 390.21, Title 49, C.F.R. show that the USDOT number is an *administrative identification number* and not a permit or certificate that authorizes the holder to engage in the transportation of personal property belonging to others for consideration. Therefore, Rumpke's receipt of a USDOT number does not meet the requirements of R.C. 5739.01(Z)(1), and Rumpke's purchases of trucks and truck parts are not entitled to exemption under R.C. 5739.02(B)(32). Rumpke holds no other state or federal permit or certificate that authorizes it to transport for hire.

{¶ 15} In the alternative, Rumpke contends that the permit it received from the Hamilton County General Health District to collect and haul garbage is a permit issued by the state within the meaning of R.C. 5739.01(Z)(1). We disagree.

{¶ 16} The basis for Rumpke's contention that the permit it received from the Hamilton County General Health District is a permit issued by the state is our decision in *Johnson's Markets, Inc. v. New Carlisle Dept. of Health* (1991), 58 Ohio St.3d 28, 33, 567 N.E.2d 1018, 1023-1024, wherein the court stated: "Health districts, and the boards formed thereunder, are state agencies." Thus, Rumpke concludes that since it has a permit from a state agency, it has met the requirements of R.C. 5739.01(Z)(1). Rumpke's conclusion ignores the nature of the permit it has received from the Hamilton County General Health District. In *Johnson's Markets,*

*Inc., supra*, the court stated, "[A]ll powers of governmental agencies are legislatively granted, and such agencies have only such regulatory authority as is granted, and the acts of such agency may not exceed such authority or be in direct conflict with the exercise of specific powers granted to state departments for statewide regulatory control." *Id*. at 36, 567 N.E.2d at 1026. The authority to regulate the motor transportation of personal property belonging to others on a statewide basis has been given to the Public Utilities Commission by R.C. 4921.04, which provides:

"The public utilities commission shall:

"(A) Supervise and regulate each motor transportation company;

"* * *

"(H) Supervise and regulate motor transportation companies in all other matters affecting the relationship between such companies and the public to the exclusion of all local authorities, except as provided in this section and section 4921.05 of the Revised Code [relating to passengers]."

{¶ 17} A board of health of a city or general health district may "provide for the inspection and abatement of nuisances dangerous to public health or comfort, and may take such steps as are necessary to protect the public health and to prevent disease." R.C. 3709.22. Pursuant to its powers, the Hamilton County General Health District has adopted rules respecting the collection of garbage. These rules require a permit to engage in the collection and removal of garbage. The rules also require payment of a fee for the permit to collect garbage. The fee for the permit to collect garbage is a specific amount per truck. The permit authorizes the collection and removal of garbage, but it does not meet the requirement of R.C. 5739.01(Z)(1) of "authorizing the holder to engage in transportation of personal property belonging to others for consideration over or on highways, roadways, streets, or any similar public thoroughfare." While a health district may regulate certain aspects of garbage or trash collection, there is no

6

authority to regulate the business of motor transport vehicles for hire. Nor does this permit authorize any activity on a statewide basis.

{¶ 18} While *Inland Refuse Transfer Co. v. Limbach* (1990), 53 Ohio St.3d 10, 558 N.E.2d 42, considered only statutes prior to the change in the law that enacted the present R.C. 5739.01(Z), certain aspects of that case are still relevant. In *Inland*, the city of Cleveland required refuse collectors to obtain licenses for their vehicles and to comply with sundry other local regulations. Inland argued that Cleveland's regulations made it a regulated industry in the nature of a public utility and, therefore, exempt from sales tax as a public utility. This court denied the exemption, stating that regulation by the Public Utilities Commission or a corresponding federal agency would satisfy the regulation requirement, but that Cleveland did not regulate Inland; rather, it simply policed it. Likewise in this case, while the Hamilton County General Health District may have the power to police the collection and removal of garbage through the granting of permits, it does not have the authority to regulate motor transportation of personal property belonging to others for consideration over or on the highways, roadways, streets, or any similar public thoroughfare within the meaning of R.C. 5739.01(Z)(1).

{¶ 19} Even if Rumpke were deemed to have a permit or certificate within the meaning of R.C. 5739.01(Z)(1), it did not show that it was transporting personal property belonging to others for consideration as required by R.C. 5739.01(Z). Rumpke is in the business of transporting various types of waste. To meet the requirements of R.C. 5739.01(Z), the waste being transported must be "personal property belonging to others." A review of the case law and regulations convinces us that the waste being transported by Rumpke is not "personal property belonging to others" for the purposes of R.C. 5739.01(Z).

{¶ 20} In *Interstate Commerce Comm. v. Browning-Ferris Industries, Inc.* (N.D.Ala.1981), 529 F.Supp. 287, Browning-Ferris was transporting waste between states and the Interstate Commerce Commission ("ICC") claimed

jurisdiction. A federal statute gave the ICC jurisdiction over the interstate transportation of "property" by motor carrier. The question presented to the court was whether the waste being transported was "property." As in the tax statute under consideration here, the Interstate Commerce Act did not define the term "property." After reviewing past decisions of the ICC, the court determined that waste was not property within the meaning of the ICC regulations. The ICC cases that had held waste not to be property explained that the persons who were getting rid of the waste were not concerned with any beneficial ownership and they did not select the destination to which it was taken. In another case relied on by the court in *Browning-Ferris*, the ICC stated that waste possessed a negative property value and, therefore, excluded waste with no recycling potential from being classified as "property."

{¶ 21} The evidence in this case established that the waste goes to a landfill and is not recycled. Rumpke's customers are not given any documentation showing where the waste is being taken. A witness from the Ohio Environmental Protection Agency testified that a generator of solid waste, distinguished from hazardous waste or infectious waste, has no ongoing environmental liability once the solid waste is picked up by the hauler. In addition, the Public Utilities Commission of Ohio has stated in Ohio Adm.Code 4901-5-30(A)(2) that " '[w]aste' is not included in the term 'property' as used in Chapter 4921. and 4923. of the Revised Code when defining transportation for hire subject to regulation by the commission." Therefore, the issue of the definition of "waste" has already been resolved by both case law and Administrative Code definition, to which we must give deference.

{¶ 22} After reviewing the foregoing we believe that the waste being transported by Rumpke is not "personal property belonging to others" within the meaning of R.C. 5739.01(Z)(1). The generators of the waste have relinquished control of the waste when it is removed by Rumpke for transport to the landfill. When Rumpke is transporting the waste to its landfill, it is transporting the waste

in furtherance of its business of waste disposal, not as a person engaged in highway transportation of other's property for hire.

{¶ 23} Accordingly, we hold that the Board of Tax Appeals' decision is reasonable and lawful and affirm it.

*Decision affirmed.*

MOYER, C.J., DOUGLAS and RESNICK, JJ., concur.

PFEIFER, J., concurs in judgment only.

COOK, J., concurs in judgment.

F.E. SWEENEY, J., dissents and would reverse the decision of the Board of Tax Appeals.

_____

**PFEIFER, J., concurring in judgment only.**

{¶ 24} I concur in the majority's determination that Rumpke does not have a permit or certificate within the meaning of R.C. 5739.01(Z)(1). I also agree with the majority that there is case law that suggests that once waste is taken from your control it is no longer your property. I write separately to explain that that conclusion is not the only possible one.

{¶ 25} Common sense suggests that the same property that exposes you to liability if a pile of it falls on someone walking past your house does not cease to be property simply because a waste disposal company picks it up. If it did, incriminating evidence, *e.g.*, documents, shredded or otherwise, could be too easily discarded.

{¶ 26} Waste does not cease to exist when it is picked up by a waste disposal company. It remains the responsibility of the person discarding it, whether hazardous, infectious, or not; therefore, it retains its nature as property.

{¶ 27} Accordingly, I concur in judgment only.

_____

*Taft, Stettinius & Hollister, L.L.P*., and *Stephen M. Nechemias,* for appellants.

*Betty D. Montgomery,* Attorney General, and *Barton A. Hubbard,* Assistant Attorney General, for appellee.

————————————