[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *N.A.T. Transp., Inc. v. McClain*, Slip Opinion No. 2021-Ohio-1374.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2021-OHIO-1374

N.A.T. TRANSPORTATION, INC., APPELLANT, *v*. MCCLAIN, TAX COMMR., APPELLEE.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *N.A.T. Transp., Inc. v. McClain*, Slip Opinion No. 2021-Ohio-1374.]

*Taxation—Use tax—R.C. 5739.02(B)(32), "highway transportation for hire" exemption—For purposes of R.C. 5739.02(B)(32), waste is "personal property belonging to" the person or entity that generated it when that person or entity has an agreement with the hauler that specifies where it is to be taken for disposal—Decision of Board of Tax Appeals affirmed in part and reversed in part.*

(No. 2020-0110—Submitted January 12, 2021—Decided April 22, 2021.)

APPEAL from the Board of Tax Appeals, Nos. 2018-55, 2018-56, and 2018-57.

_____

**Per Curiam.**

{¶ 1} Appellant, N.A.T. Transportation, Inc. ("N.A.T.), challenges a decision of the Board of Tax Appeals ("BTA") that upheld three use-tax assessments based on N.A.T.'s purchase of three trucks. N.A.T. contends that because it purchased the trucks for use in its business as a for-hire motor carrier, the purchases were exempt from sales and use tax under the "highway transportation for hire" exemption, R.C. 5739.02(B)(32). Both the tax commissioner and the BTA determined that the purchases did not qualify for the exemption, because the use of the trucks to transport waste material to landfills did not qualify as the transportation of "personal property belonging to others," as required by the statute. After careful review of the record and the arguments of the parties, we affirm the BTA's decision in part and reverse in part.

## I. BACKGROUND

### A. Facts

{¶ 2} The use-tax assessments at issue relate to N.A.T.'s purchases of (1) a 2015 Peterbilt truck, (2) a 2013 Peterbilt truck, and (3) a 2013 Lodal truck. The Lodal truck is designed to pick up and haul residential waste from the curb and is limited to that function. The two Peterbilt trucks are more versatile vehicles that are suited for picking up and hauling trash containers maintained at commercial, industrial, and "institutional" sites, such as schools.

{¶ 3} N.A.T. has held a certificate from the Public Utilities Commission of Ohio ("PUCO") as a for-hire motor carrier for decades and has hauled items such as iron and steel products, machinery, recyclables, and trash. Michael Torok, founder and chief executive officer of N.A.T., testified at the hearing before the BTA that N.A.T. serves some 7,000 residential generators of trash, including about 1,000 pursuant to contracts with political subdivisions and about 6,000 pursuant to "subscriptions," which are less formal agreements. The record contains four refuse-haulage contracts, one between N.A.T. and Wood County and three between

N.A.T. and three villages in Wood County. Each contract specifies that all refuse shall be delivered to the Wood County Landfill, and one of the village contracts designates the village as the "Shipper" and N.A.T. as the "For Hire Carrier." Additionally, the company has some 700 commercial/industrial clients and roughly ten institutional customers. The commercial, industrial, and institutional customers designate the destination for disposal of their waste.

{¶ 4} There are effectively three components that make up the amount that N.A.T.'s customers pay in connection with its hauling of their waste. The first component, which is generally determined by volume for residential customers and by container volume (plus an additional charge for being over a certain weight) for commercial, industrial, and institutional customers, is N.A.T.'s fee for transporting the waste from a designated location to a landfill. The second component is a weight-based charge imposed by the landfill. The final component, which Torok referred to as an "excise tax at the gate," is charged by the landfill primarily to cover solid-waste-district fees and fees imposed by the Ohio Environmental Protection Agency ("EPA").

{¶ 5} The record contains an April 2013 letter Torok wrote to N.AT.'s customers, stating that N.A.T. has "contractual, written, verbal or implied agreements, with all its customers, on the final destination and the disposal or processing of the materials that [it] transport[s]." The letter acknowledged that customers "expect N.A.T. to honor these agreements without exception" and reassured customers that N.A.T. would notify the customers if it became impossible for N.A.T. to comply.

{¶ 6} Also in the record are resolutions concerning the Wood County Solid Waste Management District, the Hancock County Solid Waste Management District, and the Ottawa-Sandusky-Seneca Joint Solid Waste Management District; these resolutions specify that those counties' solid-waste-disposal facilities are authorized to receive refuse that is picked up in within their jurisdiction.

{¶ 7} Ken Rieman, a former director of the Wood County Solid Waste Management District, testified before the BTA about the obligations imposed on generators and haulers in a solid-waste district. He stated that a district (1) imposes "flow control" measures that designate where waste generators must dispose of their waste and (2) levies disposal fees to fund its operations. Generators and haulers who violate their flow-control obligations will be fined if the violations are discovered. These requirements apply to industrial, commercial, and residential waste. Additionally, based on his previous employment experience, Rieman analogized waste haulage to shipping items from an industrial plant: if the recipient of an item sent a "company truck" to pick up the item, then "ownership transferred when the [item] went on the truck." But "[i]f it was a for-hire carrier, the ownership of that [item] would still belong to the plant until it reached" the recipient.

{¶ 8} An Ohio EPA official from the Division of Materials and Waste Management testified that a residential generator of solid waste—as opposed to a generator of hazardous or infectious waste—"has no ongoing environmental liability once the solid waste is picked up by the hauler for proper transportation and disposal." The official additionally testified that the hauler has environmental liability for the proper transportation and disposal of the waste from the time it takes physical possession and control of the waste until it delivers the waste at the disposal site.

### B. The decisions below

{¶ 9} N.A.T. sought use-tax exemptions for the three trucks on the ground that it used them to transport personal property belonging to others for consideration, pursuant to R.C. 5739.02(B)(32) and 5739.01(Z). The tax commissioner denied the exemption claims and upheld the assessment for each truck based on this court's decision in *Rumpke Container Serv., Inc. v. Zaino*, 94 Ohio St.3d 304, 762 N.E.2d 995 (2002). In each final determination, the tax commissioner stated that the question "whether hauling waste is considered hauling

personal property belonging to others" had "already been answered" in the negative in *Rumpke*. The tax commissioner also rejected N.A.T.'s attempts to distinguish its situation from that in *Rumpke*, finding that, as in *Rumpke*, the key fact was that N.A.T.'s customers had "relinquished control" of their trash when it was picked up by N.A.T. N.A.T. then appealed the three assessments to the BTA.

{¶ 10} On appeal, the BTA issued a consolidated decision covering all three assessments. Like the tax commissioner, the BTA rejected N.A.T.'s attempt to distinguish *Rumpke*. In addition to agreeing with the tax commissioner's reasoning, the BTA noted that most of N.A.T.'s residential customers did not "control the disposition of their waste" and that as a result, the present case fell within the ambit of this court's analysis in *Rumpke*. BTA Nos. 2018-55, 2018-56, and 2018-57, 2019 WL 7340930, *3 (Dec. 23, 2019). The BTA accordingly affirmed all three assessments, and N.A.T. appealed to this court.

## II. ANALYSIS

### A. Standard of review

{¶ 11} In reviewing a decision of the BTA, we determine whether the decision is reasonable and lawful, deferring to factual determinations of the BTA but correcting legal errors. *Accel, Inc. v. Testa*, 152 Ohio St.3d 262, 2017-Ohio-8798, 95 N.E.3d 345, ¶ 11. In this case the BTA made certain factual findings that merit our deference because they are supported by the record.

{¶ 12} N.A.T. asserts a single proposition of law: "A certified for-hire motor carrier in the business of hauling waste materials that does not take ownership of the waste materials it hauls but simply transports its customers' property to a third-party landfill is entitled to the 'transportation for hire' exemption under R.C. 5739.02(B)(32)." This proposition confronts us with a question of law: What must a waste hauler who holds a PUCO certificate as a for-hire motor carrier show in order to qualify its truck purchases for the transportation-for-hire exemption? We determine this issue regarding the meaning and proper application

of the statute de novo. *Progressive Plastics, Inc. v. Testa*, 133 Ohio St.3d 490, 2012-Ohio-4759, 979 N.E.2d 280, ¶ 15.

**B. The transportation-for-hire exemption**

{¶ 13} The sales tax and the complementary use tax broadly apply to transfers of tangible personal property for consideration. *See* R.C. 5739.01(B)(1) (sales-tax definition of "sale" includes such transfers); *E. Mfg. Corp. v. Testa*, 154 Ohio St.3d 200, 2018-Ohio-2923, 113 N.E.3d 474, ¶ 10 ("Under the sales- and use-tax statutes, every sale or use of tangible personal property is presumed to be taxable"), citing R.C. 5739.02(C) and 5741.02(G). For purposes of the sales and use taxes, "tangible personal property" is defined as "personal property that can be seen, weighed, measured, felt, or touched, or that is in any other manner perceptible to the senses"—and the definition expressly includes "motor vehicles." R.C. 5739.01(YY).

{¶ 14} R.C. 5741.02(A)(1) states that use tax is "collected as provided in" R.C. 5739.025. Under R.C. 5739.025(A), use-tax liability is calculated "by multiplying the [purchase] price by the aggregate rate of taxes in effect." And pursuant to R.C. 5741.02(B), each consumer "using * * * in this state tangible personal property * * * shall be liable for the tax" when the use tax has not been collected and remitted by the seller.

{¶ 15} The sales-tax law sets forth certain exemptions from the general operation of the tax, and the applicability of a sales-tax exemption entails a corresponding exemption under the use tax. *See* R.C. 5741.02(C)(2) (providing that the use tax does not apply to the use of tangible personal property "the acquisition of which, if made in Ohio, would be a sale not subject to the [sales] tax"); *Satullo v. Wilkins*, 111 Ohio St.3d 399, 2006-Ohio-5856, 856 N.E.2d 954, ¶ 21. Like any other taxpayer claiming an exemption, N.A.T. must show that the statute it relies on clearly expresses the exemption in relation to the facts of its

claim. *Veolia Water N. Am. Operating Servs., Inc. v. Testa*, 146 Ohio St.3d 52, 2016-Ohio-756, 51 N.E.3d 613, ¶ 19.

{¶ 16} N.A.T. predicates its claim for exemption on R.C. 5739.02(B)(32), pursuant to which the sales tax (and use tax) does not apply to "[t]he sale * * * of * * * motor vehicles that are primarily used for transporting tangible personal property belonging to others by a person engaged in highway transportation for hire." As pertinent here, R.C. 5739.01(Z)(1) defines "highway transportation for hire" as

> the transportation of personal property belonging to others for consideration by * * * [t]he holder of a * * * certificate issued by this state * * * authorizing the holder to engage in transportation of personal property belonging to others for consideration over or on highways, roadways, streets, or any similar public thoroughfare.

R.C. 5739.01(Z) proceeds to set forth two alternative criteria that are not relevant in this appeal.

{¶ 17} Accordingly, for the three N.A.T. vehicles at issue to qualify for the "highway transportation for hire" exemption, N.A.T. has the burden to prove that (1) it holds a permit or certificate described in R.C. 5739.01(Z) and (2) the vehicles are primarily used to (i) transport personal property (ii) belonging to others (iii) for consideration.

{¶ 18} It is undisputed that N.A.T.'s PUCO certificate as a for-hire motor carrier satisfies the first prong of the test. Equally undisputed is that N.A.T. receives consideration for hauling waste. The question remains whether the waste that N.A.T. hauls in the trucks at issue constitutes "personal property belonging to others" as that phrase is used in R.C. 5739.01(Z)(1) and 5739.02(B)(32).

### C. *Rumpke* does not control this case

{¶ 19} The tax commissioner argues that we must affirm based on the proposition, which the tax commissioner derives from our decision in *Rumpke*, 94 Ohio St.3d 304, 762 N.E.2d 995, that trash hauling as a general matter does not constitute the transportation of personal property belonging to others under R.C. 5739.02(B)(32). We disagree.

{¶ 20} In its decision in *Rumpke*, the BTA found the transportation-for-hire exemption inapplicable solely because the taxpayer, Rumpke, did not hold the certification specified by R.C. 5739.01(Z)(1)—and the permits or licenses held by Rumpke did not satisfy the statutory requirement. *See Rumpke Container Serv., Inc. v. Tracy*, BTA Nos. 98-M-1254 and 98-M-1257 through 1264, 2000 WL 1781711, *4-5 (Oct. 27, 2000). We affirmed that finding, 94 Ohio St.3d at 307-308, 762 N.E.2d 995, but we additionally determined that even if Rumpke had possessed the requisite certification, "the waste being transported by Rumpke is not 'personal property belonging to others' within the meaning of R.C. 5739.01(Z)(1)," *id.* at 309.[1] We predicated that determination on two factors: the generators of the waste Rumpke collected "relinquished control of the waste when it [was] removed by Rumpke for transport to the landfill" and Rumpke, by "transporting the waste to its landfill," was "transporting the waste in furtherance of its business of waste disposal, not as a person engaged in highway transportation of other's property for hire." *Id.* In support of our conclusion, we cited a federal case dealing with the interstate regulation of motor carriers and a PUCO administrative rule. *Id.*

---

1. Although N.A.T. asserts that this court's determination in *Rumpke* that the hauler in that case did not transport personal property belonging to others was "mere dicta," our discussion of that issue was not obiter dictum, because it constituted an alternative basis for the decision that would by itself have sufficed to resolve the case, *see Woods v. Interstate Realty Co.*, 337 U.S. 535, 537, 69 S.Ct. 1235, 93 L.Ed. 1524 (1949) ("where a decision rests on two or more grounds, none can be relegated to the category of obiter dictum").

{¶ 21} *Rumpke* differs from the present case in two crucial respects. First, unlike N.A.T., Rumpke did not hold a PUCO certification as a for-hire motor carrier. Second, Rumpke and its consolidated entities owned the landfills to which the Rumpke trucking affiliates transported the waste collected. *Id.* at 304. As a result, Rumpke (unlike N.A.T.) was in the "business of waste disposal" rather than in the business of for-hire carriage. *Id.* at 309.

### D. Waste is personal property

{¶ 22} For purposes of R.C. Title 57, "personal property" is defined to include "every tangible thing that is the subject of ownership * * * that does not constitute real property." R.C. 5701.03(A).[2] Despite this broad definition, the tax commissioner, relying primarily on a PUCO administrative rule, contends that waste is not "personal property." The rule he relies on is Ohio Adm.Code 4901-5-12(A)(1), which states:

> The term "waste," as used in [Ohio Adm.Code Chapter 4901-5], includes, but is not restricted to, industrial, commercial, and residential garbage, cesspool or septic tank cleanings, and any commodity or substance discarded by the owner thereof with the purpose of abandonment. "Waste" is *not included in the term "property"* as used in Chapters 4921. and 4923. of the Revised Code when defining transportation for hire subject to regulation by the [PUCO].

---

2. R.C. 5701.03(A) provides that " '[p]ersonal property' does not include * * * motor vehicles registered by the owner thereof." But that exception applies only to ad valorem property taxation, not to the sales and use tax. *Gen. Motors Corp. v. Wilkins*, 102 Ohio St.3d 33, 2004-Ohio-1869, 806 N.E.2d 517, ¶ 26-43.

(Emphasis added.)   The tax commissioner argues that our decision in *Rumpke* establishes the importance of this rule because, in support of our holding in that case, we cited and discussed former Ohio Adm.Code 4901-5-30(A)(2), 1987-1988 Ohio Monthly Record 675, effective Dec. 25, 1987, which was almost identical to current Ohio Adm.Code 4901-5-12(A)(1).  *See Rumpke*, 94 Ohio St.3d at 309, 762 N.E.2d 995.

{¶ 23} For several reasons, we reject the tax commissioner's argument. First, although we did cite and briefly discuss the former administrative rule in *Rumpke*, we did not generally hold that waste is not personal property.  Instead, we made the more specific determination that "the waste *being transported by Rumpke* is not 'personal property belonging to others' within the meaning of R.C. 5739.01(Z)(1)."  (Emphasis added.)  *Id.*  Because Rumpke was engaged in the "business of waste disposal" through its operation of landfills, *id.*, and because N.A.T. is in the business of being a for-hire carrier, our ruling in *Rumpke* does not foreclose a different conclusion in this case.

{¶ 24} Second, although this court in *Rumpke* relied in part on former Ohio Adm.Code 4901-5-30(A)(2), our discussion in *Rumpke* is neither binding nor persuasive here.  For one thing, our opinion in *Rumpke* made no mention of R.C. 5701.03(A), which defines personal property in the tax context.  As a result, *Rumpke* does not qualify as precedent concerning the applicability of R.C. 5701.03(A) in this case.  *See United Food & Commercial Workers Union, Local 1564 of New Mexico v. Albertson's, Inc.*, 207 F.3d 1193, 1199-1200 (10th Cir.2000) (previous decision that did not explicitly address an issue that may have been implicit in the earlier case was not entitled to stare decisis effect on that issue in a subsequent case); *accord State ex rel. Davis v. Pub. Emps. Retirement Bd.*, 120 Ohio St.3d 386, 2008-Ohio-6254, 899 N.E.2d 975, ¶ 39 (prior decisions of this court did not have stare decisis effect because the issue to be resolved in the case before this court was not actually litigated and decided in those decisions).

**{¶ 25}** Additionally, after we decided *Rumpke*, we clarified that administrative rules promulgated by officials other than the tax commissioner do not have the force of law in deciding tax-law issues. *Nestle R&D Ctr., Inc. v. Levin*, 122 Ohio St.3d 22, 2009-Ohio-1929, 907 N.E.2d 714, ¶ 40 (administrative rule promulgated by the director of the Ohio Department of Development could not "provide the definitive construction" of a tax-law statute of limitation, because the director of that department was not charged with promulgating rules concerning tax statutes). Accordingly, in this appeal we will devote our attention to the tax code's definition of "personal property" rather than the PUCO rule the tax commissioner cites.

**{¶ 26}** As discussed, for purposes of this case "personal property" includes "every tangible thing that is the subject of ownership." R.C. 5701.03(A). The tax commissioner argues that this definition does not encompass waste, because waste does not qualify as being "the subject of ownership." This theory rests on the idea, stated in *Rumpke*, 94 Ohio St.3d at 309, 762 N.E.2d 995, that generators of waste have "relinquished control" of it when it is hauled away, usually with the ultimate intent of abandoning all claim of ownership. If property has been abandoned, the tax commissioner reasons, it is not "the subject of ownership."

**{¶ 27}** We reject the tax commissioner's theory because it contradicts the tax commissioner's own position that, in certain cases, waste *can* be personal property for purposes of the transportation-for-hire exemption. In a 2013 decision, *Refuse Transfer Sys., Inc. v. Levin*, BTA No. 2009-1710, 2013 WL 6833199 (Oct. 2, 2013), the BTA discussed the tax commissioner's ruling regarding the waste that the taxpayer, Refuse Transfer Systems, Inc. ("RTS"), transported: in that case RTS had contracted with Waste Management to haul waste—which Waste Management had previously collected—from transfer stations to Waste Management's own landfills, *id.* at *2. The tax commissioner had found that RTS was " 'a contract hauler of solid waste * * * engaged in the highway transportation of the property

of another for consideration.' " *Id.*, quoting the tax commissioner's final determination. In so ruling, the tax commissioner necessarily regarded the waste as a "tangible thing that is the subject of ownership" pursuant to the general definition in R.C. 5701.03(A).

{¶ 28} Although the tax commissioner now attempts to distinguish his position in *Refuse Transfer*, the tax commissioner's position in that case cannot be reconciled with his argument in this case that waste is not personal property. We conclude that as a general matter, waste does constitute personal property for purposes of the transportation-for-hire exemption.

## E. N.A.T. had the burden to show that the waste it transported belonged to others

{¶ 29} N.A.T. demonstrated that it primarily transported waste to landfills with the trucks at issue, and it argues that it did not itself exercise powers of ownership over the waste it transported. But because generators of waste at some point relinquish control of it when it is removed for transport, *Rumpke*, 94 Ohio St.3d at 309, 762 N.E.2d 995, and because they do so with the ultimate purpose of abandoning their ownership interest entirely, N.A.T. must show that those generators continued to exercise powers of ownership over the waste while N.A.T. transported it.

{¶ 30} Both the tax commissioner and the BTA point to one indicator of ownership that is pertinent in this situation. In his brief, the tax commissioner concedes that waste may sometimes be "considered personal property of a customer during transportation," if "the client specifically direct[s] what waste [is] to be taken [and] where it [is] to be taken to." And the BTA similarly acknowledged in its decision that "control over the destination of transported materials has bearing on whether the transportation is of 'personal property belonging to others.' " 2019 WL 7340930 at *3, quoting R.C. 5739.02(B)(32).

12

**{¶ 31}** We agree with this basic premise and hold that for purposes of R.C. 5739.02(B)(32), waste is "personal property belonging to" the person or entity that generated it when that person or entity has an agreement with the hauler that specifies where it is to be taken for disposal.

**{¶ 32}** The BTA made two findings pertinent to applying this standard. First, the BTA noted, based on Torok's testimony, that "the majority of NAT's customers are residential subscription customers who do not specifically designate the ultimate destination of their waste." 2019 WL 7340930 at *3. Second, the BTA found that "[o]nly a minority of NAT's customers, i.e., those residential customers served pursuant to contracts with municipalities, or *commercial or industrial customers*, *specifically designate a landfill or disposal site*." (Emphasis added.) *Id.* In the end, the BTA concluded that because "the record does not establish that the majority of NAT's customers control the disposition of the waste it hauls," N.A.T. had not distinguished its situation from that in *Rumpke. Id.*

**{¶ 33}** We conclude that the BTA erred by failing to correlate its findings with the distinct primary uses of the three trucks at issue. *See R.K.E. Trucking, Inc. v. Zaino*, 98 Ohio St.3d 495, 2003-Ohio-2149, 787 N.E.2d 638, ¶ 27 (because trucks may be used for exempt and nonexempt purposes, the taxpayer bears the burden to prove the primary use of each truck). Consistent with *R.K.E.*, the issue is not what a majority of *all* N.A.T.'s customers did or did not do; rather, the issue is what those customers who were served by each individual truck did.

**{¶ 34}** The record establishes that the Lodal truck is a vehicle specifically adapted for curbside pickup of residential waste. Torok testified that the Lodal truck carries "primarily household trash." Because the preponderance of residential customers—those with subscription agreements with N.A.T.—do not designate the destination of the waste, the BTA was justified in upholding the assessment against the Lodal truck. We therefore affirm the denial of exemption and uphold the assessment of use tax as to the purchase of the Lodal truck.

{¶ 35} By contrast, the two Peterbilt trucks haul containers filled with waste primarily for commercial, industrial, and institutional customers that, as the BTA acknowledged, designate the destination for the trash. Torok testified that the Peterbilt trucks carry trash that is "primarily [generated by] commercial and industrial [customers] and schools" and similar entities. According to Torok, the Peterbilt trucks "very seldom" haul residential trash. And N.A.T.'s agreements with its commercial, industrial, and institutional customers, like its agreements with its residential-subscription customers, are oral rather than written.

{¶ 36} The BTA did not make a finding regarding the primary use of each truck, and it therefore failed to tie the use of the Peterbilt trucks to N.A.T.'s commercial, industrial, and institutional customers. However, Torok testified at the BTA hearing to the primary use of the Peterbilt trucks, and at oral argument before a master commissioner of this court, counsel for the tax commissioner conceded that Torok had provided that testimony.

{¶ 37} The tax commissioner nevertheless finds fault with N.A.T.'s presentation of evidence because N.A.T. did not provide "a breakdown for what [the trucks] do," and he contends that "[s]uch limited evidence in the context of these waste-hauling trucks is a failure by N.A.T. to meet [its] applicable burden of proof."[3]

{¶ 38} It is true that a taxpayer challenging the tax commissioner's findings has the burden to show the manner and extent of error in those findings. *Accel*, 152 Ohio St.3d 262, 2017-Ohio-8798, 95 N.E.3d 345, at ¶ 14. But the tax commissioner in this case overruled N.A.T.'s claims for exemption based on the general doctrine that hauling waste does not constitute "transporting personal property belonging to others" under R.C. 5739.02(B)(32). In doing so, the tax commissioner made no specific finding as to the primary use—whether it be residential, commercial, or

---

3. The tax commissioner also asserts that the testimonial evidence is controverted, but he does not point to any contradictory evidence.

industrial—of the Peterbilt trucks. As a result, N.A.T. did *not* have the burden to rebut a finding by proving the use of those trucks with specificity.

{¶ 39} Torok's testimony unquestionably supports a finding that the Peterbilt trucks' primary use is hauling trash for commercial, industrial, and institutional customers, and the BTA generally accepted the probative force of his testimony. Because the generators of that waste designate the destination of the waste, the Peterbilt trucks are entitled to exemption, and we reverse the BTA's contrary decision as to those trucks.

### III. CONCLUSION

{¶ 40} For the foregoing reasons, as to BTA case No. 2018-57, we affirm the decision of the BTA to uphold the tax commissioner's assessment of use tax as to the Lodal truck. But as to BTA case Nos. 2018-55 and 2018-56, we reverse the BTA's decision, grant the exemptions, and vacate the use-tax assessments as to the two Peterbilt trucks.

Decision affirmed in part
and reversed in part.

O'CONNOR, C.J., and FISCHER, DEWINE, DONNELLY, and BRUNNER, JJ., concur.

KENNEDY, J., concurs in part and dissents in part, with an opinion joined by STEWART, J.

_____

**KENNEDY, J., concurring in part and dissenting in part.**

{¶ 41} I agree with the majority's holding that waste constitutes personal property for purposes of the transportation-for-hire exemption in R.C. 5739.02(B)(32) and with its granting of the exemptions and vacating the use-tax assessments as to the two Peterbilt trucks purchased by appellant, N.A.T. Transportation, Inc. ("N.A.T."). I part ways with the majority, however, regarding its decision to uphold the assessment of use tax as to the Lodal truck.

{¶ 42} I agree with the majority that resolution of this matter turns on the meaning of the phrase "belonging to others" in R.C. 5739.02(B)(32). But I disagree with its determination that "others" for purposes here is limited to those generators of waste who control the disposal destination of their waste. When generators of waste are required by governmental regulations or resolutions to dispose of their waste at a specified facility, ownership does not transfer to the hauler but stays with the generators. Because N.A.T. has no control over the destination of the waste it primarily hauls on the Lodal truck, it does not assume ownership of that waste and the waste must necessarily be property "belonging to others" under R.C. 5739.02(B)(32). Therefore, I would reverse the decision of the Board of Tax Appeals' ("BTA"), grant the exemption, and vacate the use-tax assessment as to the Lodal truck as well.

{¶ 43} Under R.C. 5739.02(B)(32), sales tax and the corresponding use tax do not apply to "[t]he sale * * * of * * * motor vehicles that are primarily used for transporting tangible personal property belonging to others by a person engaged in highway transportation for hire." The crux of the issue before the court is whether the waste the Lodal truck primarily transports is property "belonging to others."

{¶ 44} To answer this question, we need only look to the statutory language. When construing the meaning of a statute, "[t]he question is not what did the general assembly intend to enact, but what is the meaning of that which it did enact." *Slingluff v. Weaver*, 66 Ohio St. 621, 64 N.E. 574 (1902), paragraph two of the syllabus. When a term is not defined in a statute, we use the term's plain and ordinary meaning. *Brecksville v. Cook*, 75 Ohio St.3d 53, 56, 661 N.E.2d 706 (1996).

{¶ 45} The legislature chose to use the phrase "belonging to others." In this context, "other" means "a different one," *Webster's Third New International Dictionary* 1598 (2002). The phrase "belonging to others" is unambiguous; it requires that the waste being transported belong to a party or entity different from

the hauler. "When the language of a statute is plain and unambiguous and conveys a clear and definite meaning, there is no need for this court to apply the rules of statutory interpretation." *Symmes Twp. Bd. of Trustees v. Smyth*, 87 Ohio St.3d 549, 553, 721 N.E.2d 1057 (2000). Unambiguous statutes are applied, not interpreted. *Sears v. Weimer*, 143 Ohio St. 312, 55 N.E.2d 413 (1944), paragraph five of the syllabus.

{¶ 46} For the Lodal truck to qualify for exemption under R.C. 5739.02(B)(32), therefore, the waste being primarily transported by that truck must belong to a party or entity different from N.A.T. In other words, the waste cannot belong to N.A.T.

{¶ 47} It is undisputed that when the Lodal truck collects the waste from N.A.T.'s residential-subscription customers, N.A.T. has physical possession of the waste. I recognize that evidence of possession of personal property ordinarily raises a presumption of ownership. *Mielke v. Leeberson*, 150 Ohio St. 528, 533, 83 N.E.2d 209 (1948). However, the presumption is rebuttable and may be overcome by proof of ownership in another. *Id.* One of the chief indicia of ownership is the right of disposition. *Tri-State Group, Inc. v. Ohio Edison Co.*, 151 Ohio App.3d 1, 2002-Ohio-7297, 782 N.E.2d 1240, ¶ 26 (7th Dist.), citing *Rhoades v. State*, 224 Ind. 569, 70 N.E.2d 27 (1946). The BTA in its decision in this case acknowledged that "control over the destination" of the waste is relevant regarding "whether the transaction is of 'personal property belonging to others.' " BTA Nos. 2018-55, 2018-56, and 2018-57, 2019 WL 7340930, *3 (Dec. 23, 2019), quoting R.C. 5739.02(B)(32).

{¶ 48} Michael Torok, chief executive officer of N.A.T., testified at the BTA hearing that the right to choose the destination for disposal of the waste transported by N.A.T.'s trucks is controlled by either the customer or by governmental regulations or resolutions, and the BTA in its decision took note of that testimony, *id.* N.A.T. has no control over the destination for disposal of the

waste it primarily transports on the three trucks at issue in this case. Therefore, the waste does not belong to N.A.T. for purposes of R.C. 5739.02(B)(32).

{¶ 49} The fact that in certain circumstances the generators of the waste are required by governmental regulations or resolutions to dispose of their waste at specific facilities should not alter the outcome here as to the Lodal truck. Ownership of the waste is not transferred to N.A.T. in that situation, just as it is not transferred to N.A.T. when the generators of the waste themselves specify the destination for the waste hauled on the Peterbilt trucks. The majority's narrow reading of "others" effectively adds words to the statue. But our duty when interpreting a statute is to give effect to the words used, not to delete words that were used or insert words that were not used. *See Cleveland Elec. Illum. Co. v. Cleveland*, 37 Ohio St.3d 50, 524 N.E.2d 441 (1988), paragraph three of the syllabus; *see also Griffith v. Aultman Hosp.*, 146 Ohio St.3d 196, 2016-Ohio-1138, 54 N.E.3d 1196, ¶ 18 ("We apply the statute as written * * * and we refrain from adding or deleting words when the statute's meaning is clear and unambiguous").

{¶ 50} The BTA's decision in *Refuse Transfer Sys., Inc. v. Levin*, BTA No. 2009-1710, 2013 WL 6833199 (Oct. 2, 2013), illustrates that a hauler of waste is transporting property "belonging to others" under R.C. 5739.02(B)(32) when an entity other than the generator (but not the hauler) determines the disposal destination of the waste. In that case, the BTA noted that the tax commissioner had described Refuse Transfer Systems, Inc., as " 'a contract hauler of solid waste * * * engaged in the highway transportation of the property of another for consideration,' " even though Refuse Transfer's contract was with Waste Management, the entity that collected the waste from the generators and transported it to the transfer stations where it was loaded onto Refuse Transfer's trucks. *Id.* at *2, quoting the tax commissioner's final determination.

{¶ 51} In this matter, the evidence demonstrates that the Lodal truck is primarily used to transport waste "belonging to others" under R.C. 5739.02(B)(32).

N.A.T.'s Peterbilt trucks are used for the same general purpose as the Lodal truck; to primarily transport waste that belongs to others for consideration. None of the waste being hauled on the trucks belongs to N.A.T. The fact that some of N.A.T.'s customers are able to designate the disposal destination, while others are required by governmental regulations or resolutions to dispose of their waste at a specified facility, should not result in different tax-exemption determinations. I would, therefore, reverse the BTA's decision, grant the exemption, and vacate the use-tax assessment as to the Lodal truck.

{¶ 52} Accordingly, I concur in part and dissent in part.

STEWART, J., concurs in the foregoing opinion.

_____

Calfee, Halter & Griswold, L.L.P., James F. Lang, Kelly A. Callam, and Kari D. Hehmeyer, for appellant.

Dave Yost, Attorney General, and Daniel P. Porembski, Assistant Attorney General, for appellee.

_____