**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Colonial, Inc. v. McClain*, **Slip Opinion No. 2022-Ohio-1149.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2022-OHIO-1149

COLONIAL, INC., APPELLANT, *v*. MCCLAIN, TAX COMMR., APPELLEE.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Colonial, Inc. v. McClain*, Slip Opinion No. 2022-Ohio-1149.]

*Taxation—R.C. 5739.101—Resort-area taxes—A municipal corporation or township is not required to renew its designation as a resort area after each decennial census for it to collect a previously enacted resort-area tax under R.C. 5739.101—Decision affirmed.*

(No. 2021-0373—Submitted December 7, 2021—Decided April 7, 2022.)

APPEAL from the Board of Tax Appeals, No. 2020-94.

————————————

**Per Curiam.**

{¶ 1} Appellant, Colonial, Inc.,[1] which conducts business in the village of Put-in-Bay, Ohio, challenges the decision of the Board of Tax Appeals ("BTA") upholding appellee Tax Commissioner Jeffrey McClain's denial of its application

————————————

1. The parties' stipulations and the tax commissioner's final determination identify appellant as "The Colonial, Inc." However, appellant identified itself as "Colonial, Inc.," in its notice of appeal to this court.

for a tax refund. Colonial seeks to recover a locally imposed resort-area gross-receipts excise tax (the "resort-area tax"), which Put-in-Bay originally enacted in 1995. Colonial argues that under R.C. 5739.101, the village must reenact the resort-area tax after each decennial census because the village's qualification to impose the tax depends on the result of each census. Because the village did not reenact its resort-area tax after the 2010 census until July 2016, Colonial contends that it is entitled to a refund of $269,431.65 in resort-area taxes that it paid from January 1, 2011, through June 30, 2016. The tax commissioner and the BTA rejected Colonial's interpretation of R.C. 5739.101 and denied the refund claim. We affirm.

## I. BACKGROUND

{¶ 2} This case was submitted to the BTA on the following stipulated facts. The village of Put-in-Bay enacted its resort-area tax in 1995 by passing Ordinance 648-95; the ordinance declared the village to be a resort area under R.C. 5739.101 and imposed a 0.5 percent excise tax on the gross receipts of businesses subject to the tax.

{¶ 3} Put-in-Bay passed further legislation regarding the tax on two occasions: (1) in 1999, through Ordinance 727-99, the village raised the tax rate from 0.5 percent to 1 percent and (2) in 2001, through Ordinance 796-01, the village raised the rate to 1.5 percent. No further resort-area tax legislation was enacted by the village until July 2016, at which time the village passed Ordinance 1138-16, renewing the resort-area tax at the rate of 1.5 percent. The parties also stipulate that "[t]he Village of Put-in-Bay meets the criteria set forth in R.C. 5739.101(A) to qualify as a 'resort area.' "

{¶ 4} Colonial filed its claim for a refund with the tax commissioner in February 2018, arguing that it did not owe the taxes it had paid from January 1, 2011, through June 30, 2016, because Put-in-Bay did not reenact its resort-area tax legislation after the 2010 census until the 2016 passage of Ordinance 1138-16. The

tax commissioner denied the claim, finding that R.C. 5739.101(D) "specifically states when the levy of the tax shall take effect" but that it contains "no discussion of an end date or a requirement to reenact the tax levy every ten years." The tax commissioner further found that "the language [of R.C. 5739.101(A)] was written to create a benchmark for the initial declaration and enactment of a tax levy" (underlining sic.), and he concluded that Colonial's interpretation of the statute would lead to the absurd result of a lapse in the operation of the tax because of (1) the timing of census results and (2) the statutory 60-day period between the enactment of the local tax and its effective date. *See also* R.C. 5739.101(D).

{¶ 5} In addition to addressing the merits of Colonial's argument, the tax commissioner found that Colonial's claim for a refund of any resort-area tax payments made prior to February 17, 2014, was barred by the four-year statute of limitations under R.C. 5739.104.

{¶ 6} Colonial appealed to the BTA. Focusing on the phrase "most recent decennial census" in R.C. 5739.101(A), the BTA described the issue as whether that phrase "refers to the *1990 census* or the *2010 census* when applied to the facts of this case." (Emphasis sic.) *Colonial, Inc. v. McClain*, BTA No. 2020-94, 2021 WL 1093673, *1 (Mar. 15, 2021). The BTA concluded that the statutory language referred to the 1990 census, which was the most recent census at the time the village enacted its resort-area tax, and it affirmed the tax commissioner's denial of the claim for a refund. *Id.* at *7. The BTA also affirmed the tax commissioner's ruling on the statute of limitations. *Id*. at *6.

{¶ 7} Finally, the BTA raised an additional issue that was not addressed by the parties. The board faulted Colonial for failing to prove that it had not billed its customers for the tax amounts under R.C. 5739.101(F), and it found that failure to be "an additional barrier to proving its refund claim." BTA No. 2020-94, 2021 WL 1093673, at *6. The tax commissioner noted his disagreement with this ruling in his merit brief to this court.

## II. THE RESORT-AREA TAX

{¶ 8} The General Assembly enacted the resort-area tax in 1993. Am.Sub.H.B. No. 327, 145 Ohio Laws, Part III, 5409, 5410-5411. The resort-area tax replaced an earlier "island tax" that this court had held to be unconstitutional. *See Put-In-Bay Island Taxing Dist. Auth. v. Colonial, Inc.*, 65 Ohio St.3d 449, 605 N.E.2d 21 (1992). Under the current resort-area tax, a municipality or township may declare itself to be a resort area and then impose the resort-area tax as a stated percentage of gross business receipts only if the following three criteria are satisfied:

> (1) According to statistics published by the federal government based on data compiled during the most recent decennial census of the United States, at least sixty-two per cent of total housing units in the municipal corporation or township are classified as "for seasonal, recreational, or occasional use";
>
> (2) Entertainment and recreation facilities are provided within the municipal corporation or township that are primarily intended to provide seasonal leisure time activities for persons other than permanent residents of the municipal corporation or township;
>
> (3) The municipal corporation or township experiences seasonal peaks of employment and demand for government services as a direct result of the seasonal population increase.

R.C. 5739.101(A). If these criteria are met, a municipal corporation or township "may levy an excise tax on vendors for the privilege of making sales in, or transporting persons or property to or from, the municipality or township." *Kelleys Island Caddy Shack, Inc. v. Zaino*, 96 Ohio St.3d 375, 2002-Ohio-4930, 775 N.E.2d 489, ¶ 1; *see also* R.C. 5739.101(B).

**{¶ 9}** R.C. 5739.101 through 5739.104 address administrative aspects of the resort-area tax, including (1) the filing of returns with the tax commissioner and the requirement that the state distribute the tax proceeds to the appropriate political subdivisions, R.C. 5739.102, and (2) the process for issuing refunds of taxes that were paid illegally or erroneously or that were paid based on an illegal or erroneous assessment, R.C. 5739.104.

### III. ANALYSIS

**{¶ 10}** "In reviewing a decision of the BTA, we determine whether the decision is reasonable and lawful, deferring to factual determinations of the BTA but correcting legal errors." *N.A.T. Transp., Inc. v. McClain*, 165 Ohio St.3d 250, 2021-Ohio-1374, 178 N.E.3d 454, ¶ 11. Before turning to Colonial's primary argument in this appeal, we consider the status of two additional issues that Colonial raises in its merit brief. First, Colonial challenges the BTA's ruling that the statute of limitations barred Colonial's claim for a refund beyond the four-year period immediately preceding its 2018 refund application. Because Colonial's notice of appeal failed to challenge the BTA's ruling on this issue, we lack jurisdiction to grant Colonial relief from this aspect of the BTA's decision. *See Yanega v. Cuyahoga Cty. Bd. of Revision*, 156 Ohio St.3d 203, 2018-Ohio-5208, 124 N.E.3d 806.

**{¶ 11}** Second, the BTA concluded that Colonial's failure to prove that it did not bill its customers for amounts of resort-area tax constituted "an additional barrier" to its refund claim. BTA No. 2020-94, 2021 WL 1093673, at *6. The BTA took the position that billing the customers under R.C. 5739.101(F) would mean that Colonial itself did not (in a legal sense) "pay" the tax for purposes of claiming a refund. Both Colonial and the tax commissioner disagree with this ruling by the BTA.

**{¶ 12}** Notably, the statute providing for refunds of resort-area tax, R.C. 5739.104, does *not* predicate a taxpayer's entitlement to a refund on proof that the

taxpayer did not charge to its customers the tax that it paid to the state. *Compare* R.C. 5739.07(A) (requiring the tax commissioner to refund sales tax to a vendor only if the vendor has refunded to the consumer the sales tax collected from that consumer or if the vendor billed the consumer for the tax but the consumer did not pay the tax). Accordingly, whatever its merit may be, the BTA's determination of an "additional barrier" to Colonial's refund claim does not involve a *jurisdictional* threshold to the consideration of Colonial's refund application. *See Novita Industries, L.L.C. v. Lorain Cty. Bd. of Revision,* 153 Ohio St.3d 57, 2018-Ohio-2023, 100 N.E.3d 387, ¶ 18 ("We have held that a procedural error or omission ordinarily does not affect jurisdiction in a tax proceeding unless the error or omission constitutes a violation of a requirement set forth in the applicable statutes"). Given that the tax commissioner disagrees with the BTA's ruling on this point, we are free to address the primary interpretative issue and dispose of the appeal on that basis. And because we resolve the main issue against Colonial, the BTA's determination of an "additional barrier" to Colonial's application for a refund is moot.

{¶ 13} We now turn to the primary issue before us. In its proposition of law, Colonial contends that "if a locality has not declared itself to be a 'resort area' based on the most recent decennial census relative to the tax-year at issue, no resort tax is owed." We disagree.

{¶ 14} In plain terms, R.C. 5739.101(A) states that "[t]he legislative authority of a municipal corporation, by ordinance or resolution * * * may declare the municipal corporation * * * to be a resort area for the purposes of this section," if certain criteria are met, and R.C. 5739.101(B) states that "the legislative authority of a municipal corporation or township, in its ordinance or resolution declaring itself a resort area under this section, may levy a tax on the privilege of engaging in the business of * * * [making sales in the political subdivision or providing intrastate transportation of persons or property to or from the political

6

subdivision].”  Notably absent from these provisions and from the other relevant Revised Code sections is any language indicating that a previously enacted resort-area tax automatically “sunsets” (i.e., ceases to be operative) in light of a new decennial census.  Nor do the relevant statutes state that the declaration of resort-area status and the imposition of a resort-area tax must be renewed at ten-year intervals.

{¶ 15} Colonial contends that the policy of tying the tax to resort-area status under the census militates in favor of a renewed declaration of that status after each census.  Although it might have been reasonable for the General Assembly to take such an approach, the statute as enacted does not impose that requirement, and the statute’s text controls.  In the past, we have declined to fashion deadlines not explicitly stated in a statute based on our view of the policy considerations.  *See Life Path Partners, Ltd. v. Cuyahoga Cty. Bd. of Revision*, 152 Ohio St.3d 238, 2018-Ohio-230, 94 N.E.3d 565, ¶ 10 (reversing the dismissal of a “continuing complaint” for lack of timeliness under R.C. 5715.19(D) because “nothing in that provision authorizes the [board of revision] to dismiss a continuing complaint for lack of timeliness,” and stating that “[i]f the lack of deadline is a problem, it’s up to the General Assembly to make an easy fix”).  *See also State ex rel. Nimberger v. Bushnell*, 95 Ohio St. 203, 116 N.E. 464 (1917), paragraph four of the syllabus (when the clear language of a statute “works an inconvenience or accomplishes a result not anticipated or desired,” the “consequence can be avoided only by a change of the law itself, which must be made by legislative enactment and not by judicial construction”).  By the same logic, we reject Colonial’s argument here.

{¶ 16} We find no ambiguity in the statutory language at issue and, applying the statute to the facts of this case, we conclude that the BTA correctly affirmed the tax commissioner’s denial of Colonial’s application for refund.

### IV.  CONCLUSION

{¶ 17} For the foregoing reasons, we affirm the decision of the BTA.

Decision affirmed.

O'CONNOR, C.J., and KENNEDY, FISCHER, DEWINE, DONNELLY, STEWART, and BRUNNER, JJ., concur.

_____

Mayle, L.L.C., Andrew R. Mayle, Ronald J. Mayle, and Benjamin G. Padanilam, for appellant.

Dave Yost, Attorney General, and Daniel G. Kim, Assistant Attorney General, for appellee.

_____